EL PUEBLO, PETICIONARIO, *v.* CENTRAL FORTUNA, DEMANDADA.

SOLICITUD para que se expida un auto de *mandamus* a la demandada para que presente al Tesorero de Puerto Rico la planilla de contribución de patente.

No. 143.—Resuelto en febrero 18, 1915.

Resuelto en reconsideración en abril 16, 1915.

CONTRIBUCIÓN DE PATENTES—FERROCARRILES INTRATERRITORIALES—FIJACIÓN DE UN IMPUESTO COMO CONDICIÓN PREVIA A LA EXPLOTACIÓN DEL NEGOCIO—INGRESOS PROCEDENTES DEL NEGOCIO EN PUERTO RICO—INGRESOS PROCEDENTES DEL TRANSPORTE FUERA DE PUERTO RICO—COMERCIO ENTRE ESTADOS—CORPORACIONES EXTRANJERAS—CORPORACIONES DEL PAÍS—CONSTITUCIÓN DE LOS ESTADOS UNIDOS—LEY ORGÁNICA.—La demandada en este caso, Central Fortuna, se dedica actualmente al negocio de ferrocarriles en Puerto Rico, el cual ha estado explotando desde antes y después del 1 de enero de 1914. El Tesorero de Puerto Rico, de acuerdo con la Ley No. 134, de agosto 12, 1913, requirió a dicha corporación para que le remitiera el certificado del total de los ingresos brutos de las operaciones mercantiles del negocio realizado durante el año anterior, a lo que se negó la demandada, alegando, en su contestación a la solicitud de *mandamus*, que se dedica, como conductora pública, al comercio entre Estados, a saber, al comercio entre los vários Estados de los Estados Unidos y Puerto Rico, y que la referida Ley No. 134, imponiendo una contribución de patente sobre negocios en Puerto Rico, constituye una reglamentación de ese comercio y un gravamen sobre el mismo,

por lo que es contraria a la Constitución de los Estados Unidos y a la Ley Orgánica.  *Se resolvió:*

1. Que un Estado puede imponer una contribución a una corporación extranjera apreciada por el total de sus ingresos, pero no puede imponerse una contribución de patente como condición previa a la realización de un negocio cuando el impuesto del mismo recae sobre un negocio que se lleva a cabo necesaria y principalmente fuera del Estado.

2. Que todos los ingresos obtenidos por una compañía de ferrocarriles por transportes efectuados dentro del territorio constituyen necesariamente, dada las condiciones físicas del país, el producto de un negocio llevado a cabo en Puerto Rico, y la Ley No. 134 de 1913, estableciendo un nuevo sistema de contribución de patente, tiene por objeto comprender a todos y cada uno de los ingresos derivados del negocio de ferrocarriles en Puerto Rico, procedente o nó en parte dichos ingresos de los paquetes cuyo último destino sea su embarque para New York.

3. Que la Central Fortuna explota un negocio que se realiza y depende exclusivamente del suelo de Puerto Rico; que no lleva a cabo ninguna parte de su negocio de ferrocarril fuera de Puerto Rico; que los ingresos por el negocio de ferrocarril realizados en Puerto Rico son esencial y fácilmente separables de aquellos que se obtienen por el transporte fuera de la Isla, y que por tanto aunque la contribución que se pretende imponer es a manera de un impuesto y como condición previa para la realización del negocio, es reguladora del negocio mismo y como tal no constituye una contribución sobre el comercio entre Estados.

4. Que ninguna compañía de ferrocarriles en Puerto Rico puede eludir el pago de esta clase de patentes y su reglamentación por el solo hecho de ser una corporación extranjera o porque transporte paquetes cuyo último destino sea el embarque a los Estados Unidos, pues la ley no trata de fijar una contribución a los paquetes entre Estados sino que pretende imponer, sin distinción alguna, una contribución gradual de patentes apreciada por el total de los ingresos prácticamente sobre toda clase de negocios realizados en Puerto Rico.

5. Que sólo se expresa en las alegaciones de la Central Fortuna que ''se dedica al comercio entre Estados,'' y aunque puede estar realizando un negocio de expreso o de expedición de mercancías independiente de un negocio de ferrocarril y alegar que es una porteadora entre Estados, sostener siquiera, según las condiciones de Puerto Rico, que el ferrocarril está ocupado en el comercio entre Estados, sería expresar una conclusión de derecho más bien que un hecho, siendo además de la incumbencia de la demandada el probar no solamente que su negocio de ferrocarriles formaba parte del comercio entre Estados, sino también que esta clase de patentes constituía un gravamen sobre dicho comercio entre Estados.

6. Que el hecho de que las mercancías sean transportadas en vapores desde el continente para luego ser conducidas por ferrocarril a algún punto de la Isla, o vice versa, no convierte el negocio realizado por un ferrocarril en Puerto Rico en comercio entre Estados.

Reconsideración de sentencia.

FERROCARRILES — COMERCIO ENTRE ESTADOS — CONOCIMIENTO JUDICIAL.—Esta Corte Suprema está en el deber de tomar conocimiento judicial del hecho de

que el negocio de ferrocarril, como tal, que está enteramente situado en Puerto Rico, no es comercio entre Estados.

ID.—INGRESOS DERIVADOS DEL NEGOCIO EN PUERTO RICO.—Cuando el negocio de ferrocarril se efectúa en su totalidad dentro de Puerto Rico, los ingresos derivados del mismo son necesariamente ingresos procedentes de un negocio local.

COMERCIO ENTRE ESTADOS—LEY NO. 134 DE 1913—CONTRIBUCIÓN DE PATENTES.— La Ley No. 134 de 1913, no impone una contribución sobre el material o instrumentos usados en el negocio entre Estados, por lo que no existe ningún gravamen o prohibición sobre tal comercio, ni impedimiento alguno a su libre realización.

Los hechos están expresados en la opinión.   •

Abogados del peticionario: *Sres. Wolcott H. Pitkin, Jr., Attorney General de Puerto Rico,* y *Robert Szold, oficial jurídico.*

Abogado de la demandada: *Sr. Francis E. Neagle.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

La única cuestión que ha sido promovida en este caso en la cual han insistido las partes, y que.no fué sometida a la consideración de este tribunal en el caso de *El Pueblo* v. *Neagle,* 21 D. P. R., 356, es si la Ley No. 134 de agosto 12, 1913, es contraria a la Constitución de los Estados Unidos y a la Ley Orgánica porque impone una contribución de patente como requisito previo al derecho de la demandada para dedicarse al comercio, sosteniendo dicha demandada en su alegato que dicho comercio, o por lo menos parte del mismo, es comercio entre Estados y que la Ley No. 134 constituye por tanto una reglamentación del comercio inter-estado y un gravamen sobre el mismo, y además que con ella se trata de legislar sobre una materia ya abarcada por el Congreso en su Ley de Comercio entre Estados.

Quedó admitido por el gobierno mediante estipulación que todas las alegaciones de hecho en la contestación formulada por la demandada en este caso debían ser tenidas por ciertas.

El peticionario alegó entre otras cosas que la " 'Central Fortuna' está explotando actualmente una línea ferroviaria en Puerto.Rico y ha. estado realizando dicho negocio antes

y después del día 1º. de enero de 1914," siendo la contestación de la demandada respecto a dicha alegación como sigue:

"2. Admite todas y cada una de las alegaciones contenidas en el párrafo 'segundo' de dicha petición, y alega que se dedica como conductor público al comercio entre Estados, a saber, al comercio entre los varios Estados de los Estados Unidos y Puerto Rico."

Las cuestiones legales envueltas en este caso surgen del párrafo citado y de la estipulación.

Alega el gobierno en primer término que el objeto de la ley en este caso es sólo imponer contribución al negocio de ferrocarriles intra-territoriales, y, por consiguiente, que no hay en ello envuelta ninguna cuestión que se relacione con el comercio entre Estados. Sin embargo, las partes han considerado esta cuestión bajo cierto aspecto que es muy distinto de nuestro propio criterio sobre la materia, el cual estudiaremos primeramente.

Las secciones pertinentes de la Ley No. 134 son las siguientes:

"Sección 1.—Que a partir del día 1º. de julio de 1913, el Tesorero de Puerto Rico, en adición a todas las otras contribuciones ya autorizadas por la ley, impondrá y cobrará de acuerdo con los tipos especificados, a toda persona, firma, asociación, sociedad, corporación ú otra forma cualquiera de organización comercial o industrial, y a cualquiera rama o ramas de éstas, las patentes que más adelante se enumeran; * * *

"Sección 2.—El negocio o industria de toda persona, firma, asociación, sociedad, corporación, etc., o cualquier sucursal o sucursales del mismo, sujeto al pago de patentes como se dispone en esta ley, será clasificado por el Tesorero de Puerto Rico en una de las clases que más adelante se mencionan, de acuerdo con la relativa importancia del mismo, apreciada por el volúmen de negocios realizados en Puerto Rico, sin tener en cuenta la ganancia neta o provecho que produzcan, y según resulte de su comparación con otros negocios o industrias similares en todo Puerto Rico.

"Sección 3.—Toda persona, firma, asociación, sociedad, corporación, etc., que explote cualquiera de los negocios o industrias que en esta ley se relacionan, pagará cada trimestre la patente que en esta ley se prescribe, de acuerdo con la clasificación a que se refiere la

sección anterior, y ninguna persona, firma, asociación, sociedad, o corporación, etc., se dedicará o explotará ningún negocio, oficio o industria de los que en esta ley se describen, hasta o a menos que hubiere pagado la patente correspondiente en la forma y cantidad que más adelante se dispone.''

''Sección 10.—*    *    *.

''Toda persona, firma, asociación, sociedad, corporación, etc., que explotare o que se propusiere explotar cualquier negocio o industria para el cual se requiere una patente por virtud de las disposiciones de esta ley, presentará bajo juramento o afirmación al Tesorero de Puerto Rico, a solicitud de dicho Tesorero, un certificado en la forma que él prescribiere por reglamento, haciendo constar el nombre o estilo del referido negocio o industria, sitio en que se está explotando, o se va a explotar dicho negocio o industria, y el volumen de negocios hechos en Puerto Rico. La frase 'volumen de negocios' tal como se emplea en esta sección y en la sección 2 de esta ley, se considerará en el sentido de significar las ventas brutas solamente, distinguiéndoseles de compras y ventas, en aquellos negocios o industrias que se exploten principalmente con el fin de vender mercancías o productos de una fábrica u otra industria. El Tesorero de Puerto Rico, el jefe del Negociado de Rentas Internas, y los varios agentes o representantes del antedicho negociado, quedan por la presente autorizados para administrar el juramento o afirmación que se requiere por esta sección.

''Toda persona, firma, asociación, sociedad, corporación, etc., que voluntariamente dejare de presentar al Tesorero de Puerto Rico el antedicho certificado o que, a sabiendas, hiciere una declaración falsa en el mismo, o que infringiere cualquier. disposición de esta ley, podrá ser denunciado por el Tesorero de Puerto Rico ante una corte de competente jurisdicción y convicta que fuere será culpable de delito menos grave (*misdemeanor*), y penada con multa que no exceda de' quinientos ($500) dólares.''

El *mandamus* tenía por objeto obtener el anterior certificado, habiendo pedido el Tesorero a la corporación demandada que le remitiera un certificado del total de los ingresos brutos de las operaciones mercantiles del negocio realizado en Puerto Rico durante el año anterior. La enumeración contenida en el artículo 12 de dicha Ley No. 134, es también pertinente.

No puede haber duda alguna y es un hecho que ha sido prácticamente admitido por la demandada, que el Estado puede exigir una contribución a las corporaciones extranjeras, apreciada por el total de sus ingresos, criterio que está sostenido por la jurisprudencia. *Maine* v. *Grand Trunk Ry. Co.*, 142 U. S., 217; *Adams Express Co.* v. *Ohio*, 165 U. S., 220; *United States Express Co.* v. *Minnesota*, 223 U. S., 335; *Baltic Mining Co.* v. *Massachusetts*, 231 U. S., 86. Pero lo que la demandada sostiene es que ningún Estado o Territorio puede fijar una contribución de patente a una corporación que obtiene parte de sus ingresos del comercio entre Estados, cuando el estatuto exige que dicha corporación o compañía adquiera una patente y pague tales derechos de patente como condición previa para llevar a cabo comercio entre Estados, disponiendo el estatuto de Puerto Rico que "ninguna persona, firma, asociación, sociedad, o corporación se dedicará o explotará ningún negocio, oficio o industria de los que en esta ley se describen, hasta o a menos que hubiere pagado la patente correspondiente."

Admite el gobierno en su alegato, por lo menos para los fines de la discusión, que la Central Fortuna se encuentra transportando paquetes entre Estados, de sitios en Puerto Rico a puntos a y dentro de los Estados Unidos; pero alega también el gobierno que los ingresos de los referidos paquetes entre Estados pueden separarse de aquellos que proceden del negocio puramente insular. En otras palabras, si un ferrocarril obtenía sumas de dinero por paquetes enviados de San Juan a Caguas y también recibía dinero por paquetes procedentes de Caguas cuyo último destino es Nueva York, entonces los ingresos del negocio local entre Caguas y San Juan podrían ser diferenciados de aquellos ingresos derivados de los paquetes de Caguas y que van destinados finalmente a Nueva York. Llama la atención el gobierno al hecho de que la Corte Suprema de los Estados Unidos probablemente se regiría por la interpretación que esta corte diera a este estatuto, y por esa misma razón creemos que se debe al deman-

dado el que expresemos que no estamos de acuerdo con la alegación formulada por el gobierno en cuanto a este particular. La patente es apreciada sobre los ingresos procedentes del negocio de ferrocarriles realizado en Puerto Rico. La sección 2 de la ley impone al Tesorero de Puerto Rico el deber de clasificar un negocio o industria ''de acuerdo con la relativa importancia del mismo apreciada por el volumen de negocios realizados en Puerto Rico.'' Todo lo que obtenga un ferrocarril por transportes dentro de Puerto Rico es necesariamente un negocio llevado a cabo en Puerto Rico y un negocio de ferrocarriles realizado en Puerto Rico. Creemos que el propósito del estatuto es el de incluir todos y cada uno de los ingresos procedentes del negocio de ferrocarriles en Puerto Rico, ya sean éstos obtenidos o no en parte de los paquetes cuyo último destino es el embarque para Nueva York. Si los funcionarios administrativos del gobierno se basan solamente en esta cuestión de divisibilidad, entonces el *mandamus* en este caso no debe tomar una forma definitiva.

Los casos que han sido citados por el gobierno *Osborne* v. *Florida,* 165 U. S., 650; *State* v. *Fleming,* 70 Neb., 523; *Northern Pacific Ry. Co.* v. *Barnes,* 2 N. D. 351, se referían todos a porteadores entre Estados, y en ellos la corte de Estado declaró que el negocio entre Estados podría ser distinguido del negocio dentro del Estado propiamente dicho. No se trató de modo alguno de establecer diferencia entre el transporte local de paquetes entre Estados y el transporte local de paquetes dentro del propio estado. Los casos de *Armour Packing Co.* v. *Lacy,* 200 U. S., 226, y *Kehrer* v. *Steward,* 197 U. S., 67, eran simplemente casos en los cuales el negocio de las casas empaquetadoras dentro del Estado se diferenciaba del negocio de las casas empaquetadoras fuera del Estado, y en los que la corporación realizaba un negocio entre Estados. Convenimos con la demandada en que los ingresos procedentes de cualquier parte del negocio del ferrocarril son necesariamente obtenidos dentro de Puerto Rico.

Sin embargo según ya hemos dicho, también sostiene el gobierno que esta patente se impone por llevar a cabo un negocio local de ferrocarriles en Puerto Rico. Si la compañía no obtiene ingresos por el transporte de paquetes de puntos en Puerto Rico a la costa de Puerto Rico, o en otras palabras, si nada recibe como ferrocarril por el transporte de los referidos paquetes entre Estados, desde luego que entonces no obtiene ningún ingreso por dicho negocio entre Estados, y éstos única y exclusivamente proceden del negocio de ferrocarriles por el transporte de paquetes intra-insulares. Si, por el contrario, parte de sus ingresos proceden del transporte en su ferrocarril de paquetes entre Estados, entonces, teniendo en cuenta el estado material de cosas en Puerto Rico, se hace posible para la Central Fortuna el separar los ingresos de su negocio de ferrocarril de aquellos que provienen del transporte de las costas de Puerto Rico a puntos a o dentro de los Estados Unidos.

Debe notarse que en los principales casos que han sido citados por la demandada, o sea, en los de *Leloup* v. *Port of Mobile,* 127 U. S., 640; *Crutcher* v. *Kentucky,* 141 U. S., 47; *The Postal Telegraph Cable Co.* v. *Adams,* 155 U. S., 688; y el de *Adams Express Co.* v. *New York,* 232 U. S., 14, en los cuales la Corte Suprema resolvió que no podía exigirse una contribución de patente como condición previa a la realización de un negocio, en cada uno de estos casos la contribución que de tal modo se trataba de fijar se imponía principalmente y era por su naturaleza esencial sobre el comercio entre Estados. En verdad, como ha sido frecuentemente expresado por la Corte Suprema de los Estados Unidos, la razón por la cual las contribuciones de esta naturaleza no son consideradas como válidas es la de que el gravamen se impone al negocio que se efectúa necesariamente fuera del Estado y principalmente por ese motivo. Las compañías de telégrafo y de expreso en cuestión eran ciertamente porteadores entre Estados. Un negocio de ferrocarriles en Puerto Rico está necesaria y enteramente comprendido dentro de

la isla. Ninguna parte de dicho negocio de ferrocarriles puede llevarse a cabo fuera de la isla. El ferrocarril puede transportar paquetes cuyo último destino sea el embarque de los mismos a puntos dentro de los Estados Unidos, pero el negocio de ferrocarriles no se realiza fuera de Puerto Rico. Creemos que la demandada confunde en su alegato el negocio de ferrocarriles que ella explota con un negocio posible de expreso o de remisión de artículos que pueda tener en perspectiva, pero sin embargo la duda que surge en este caso es si una patente sobre el negocio de ferrocarriles de la Central Fortuna constituye una contribución sobre el comercio entre Estados, por el hecho, según alega la demandada, de que tal compañía de ferrocarriles transporta paquetes entre Estados.

En el caso de *Western Union Telegraph Co.* v. *Kansas*, 216 U. S., 1, se vuelve a expresar el criterio de que la regla de que un Estado puede excluir a las corporaciones extranjeras de sus límites, o fijar tales términos y condiciones al negocio que en el mismo lleven a cabo según lo considere compatible con su política pública, no es de aplicación a las corporaciones extranjeras dedicadas al comercio entre Estados; y que el hecho de exigir que una compañía de telégrafos pague cierto tanto por ciento sobre la totalidad de su capital por medio de una contribución o derecho de patente, cuando dicho capital representa todos sus intereses en los negocios y la propiedad del mismo dentro y fuera del Estado, constituía un gravamen y contribución al negocio de la compañía entre Estados, en violación de la cláusula de comercio contenida en la constitución, así como también una contribución sobre sus propiedades fuera de los límites del Estado que este último no podía imponer de modo compatible con el debido procedimiento de ley prescrito en la Enmienda 14. Y en el caso de *Galveston, Harrisburg & Ry. Co.* v. *State of Texas*, 210 U. S., 217, se resolvió que un estatuto de Texas que imponía una contribución anual del 1 por ciento sobre los ingresos netos de cada ferrocarril comprendido entera-

mente dentro del Estado no era válido, puesto que la mayor parte del total de ingresos de tal ferrocarril procedía del transporte de pasajeros y carga procedentes de puntos fuera del Estado o con destino a los mismos. Se sostuvo el criterio de que la contribución constituía un gravamen sobre el comercio entre Estados y era nula en cuanto se basaba en los ingresos del transporte entre Estados. La corte se expresó en el siguiente lenguaje que se cita con aprobación en el caso de *Western Union Tel. Co.* v. *Kansas, supra:*

"Ni las cortes del Estado ni las legislaturas, por el hecho de dar un nombre determinado a una contribución o por usar cierto lenguaje, pueden quitar a esta corte el derecho que tiene a considerar la naturaleza y el efecto de una contribución, y si la misma afecta al comercio entre Estados de un modo tan directo que constituya una reglamentación, no puede ser eludido por el nombre o forma."

Pero es una regla pobre aquella que es buena para unos y mala para otros, y la cuestión que ha sido sometida a este tribunal es si no puede exigírsele a una compañía de ferrocarriles que esté transportando algunos paquetes destinados al embarque para el extranjero, que pague una contribución de patentes de igual manera que las demás corporaciones de la isla, por el mero hecho de que está realizando dicho transporte de paquetes. Si una corte puede examinar un estatuto que expresa que no impone una contribución al negocio entre Estados, para encontrar eso no obstante, su verdadero efecto, también puede una corte de igual modo examinar un estatuto en el que generalmente se impone una contribución a los ingresos del negocio de ferrocarril, para cerciorarse de si es anticonstitucional la inclusión accidental en dicha contribución de los ingresos de paquetes cuyo último destino es el embarque trans-oceánico. En otras palabras, ¿constituye la fijación de tal impuesto como condición previa a la explotación del negocio, un verdadero gravamen u obstáculo sobre el comercio entre Estados?

En realidad, estando este ferrocarril necesariamente situado y funcionando enteramente en Puerto Rico, y como

sus ingresos se deben a las operaciones llevadas a cabo en Puerto Rico, la cuestión planteada queda prácticamente resuelta por el caso de *Ponce Lighter Co.* v. *Municipio de Ponce,* 19 D. P. R., 760, pero consideraremos la cuestión relativa al negocio del ferrocarril en Puerto Rico de un modo más amplio.

Como ya hemos visto, la pregunta que surge en todos los casos es, ¿cuál es la naturaleza esencial del comercio que ha de ser protegido? Podemos saberlo tomando en consideración la índole del negocio.

Asumiremos, como lo ha hecho el gobierno, que la Central Fortuna es dueña de un ferrocarril que parte de un punto en el interior de Puerto Rico a un punto o puntos en la costa de Puerto Rico. Ese es el caso de todos los ferrocarriles de Puerto Rico. Se desprende del caso de *Western Union Tel. Co.* v. *Kansas, supra,* y otros anteriores a la resolución de ese caso, que Puerto Rico puede fijar términos y condiciones a sus negocios puramente locales lo mismo en el caso de que el negocio que se explote lo lleve o no a cabo una corporación local. Si puede exigirse a una corporación del país que realiza negocios de ferrocarriles que pague previamente una contribución de patente, no vemos razón por la cual una corporación extranjera no deberá quedar sujeta al cumplimiento del mismo requisito. Existe una fuerte presunción de que toda corporación de ferrocarriles en Puerto Rico transporta carga y paquetes con destino al embarque para el extranjero, fuera de la isla. Sabemos que la demandada habrá de alegar que toda compañía de ferrocarriles en Puerto Rico deberá entonces quedar exenta de tal clase de contribución.

En los Estados Unidos la mayor parte de los ferrocarriles están dedicados directamente al negocio entre Estados o asociados con otros ferrocarriles o conductores en otros Estados, que realizan dicho negocio entre Estados. Tal vez pueda decirse que el negocio de ferrocarriles en los Estados Unidos es casi necesariamente entre Estados, así como una compañía de expreso o una compañía de telégrafos casi siempre

lleva a cabò un negocio esencialmente entre Estados. Por consiguiente la Corte Suprema de los Estados Unidos ha observado con atención dicho negocio de ferrocarril para proteger el carácter que tiene de negocio entre Estados de cualquier intervención o gravamen que pueda imponerle el Estado. Una contribución de patente como requisito previo para llevar a cabo negocios de ferrocarriles en los Estados Unidos casi necesariamente intervendría en el comercio entre Estados. El caso es necesariamente de otro modo en Puerto Rico. *Ad ea quae frequentius accidunt jura adaptantur.* El negocio que realiza la Central Fortuna y al cual se trata de fijar una contribución, es un negocio de ferrocarriles que tiene lugar y depende exclusivamente del suelo de Puerto Rico. Ninguna parte de tal negocio de ferrocarriles se lleva a cabo fuera de Puerto Rico como tampoco ninguna porción de sus ganancias o ingresos a los cuales se pretende fijar una contribución están fuera de Puerto Rico. Ya nos hemos referido al' hecho de que los ingresos del negocio de ferrocarril efectuado en Puerto Rico son esencialmente, y pueden fácilmente ser separados de los ingresos procedentes del transporte llevado a cabo fuera de la isla. Aunque esta contribución es en la forma de una licencia y una condición previa a la realización del negocio, es reguladora del negocio de ferrocarriles como tal y no es una contribución sobre los ingresos entre Estados. La parte demandada parece deducir, especialmente al hablar de la ley sobre comercio entre Estados, el hecho de que ningún negocio de ferrocarriles puede ser regulado por Puerto Rico sino que está sometido exclusivamente al poder del Congreso. No existe absolutamente nada en la ley de comercio entre Estados que afecte o trate sobre las cuestiones promovidas en este caso, y el mero hecho de que el Congreso haya fijado derechos que han de cobrarse por el transporte territorial, para nada se relaciona con el presente caso. La cuestión que tenemos ante nuestra consideración y que siempre queda por resolver es si la clase de patente que trata de imponerse por la Ley No. 134 constituye un gravamen sobre

el comercio entre Estados. En el presente caso la verdadera naturaleza de la patente es por el uso del suelo de Puerto Rico, por el derecho a efectuar el negocio, a usar exclusivamente caminos en Puerto Rico y pagar por el monopolio de dicho camino en particular. Ninguna compañía de ferrocarriles en Puerto Rico puede eludir esta clase de patente y su reglamentación, simplemente por el hecho de ser una compañía extranjera o meramente porque transporte paquetes cuyo último destino sea el embarque a los Estados Unidos.

Los casos que han sido citados por la demandada, a saber, *The Daniel Ball,* 77 U. S., 557, 565; *Cincinnati, etc., Co.* v. *Interstate Commerce Commission,* 162 U. S., 184; *Heyman* v. *Southern Ry. Co.,* 203 U. S., 270; *Galveston, etc., Ry. Co.* v. *Texas,* 210 U. S., 217; *Railroad Commission* v. *Texas, etc., Co.,* 239 U. S., 336, 341; *St. Louis, etc., Co.* v. *Seale,* 239 U. S., 156, 161, con el fin de mostrar que el transporte local de paquetes entre Estados es comercio entre Estados, no pueden afectar a la decisión. La Ley No. 134 no trata de fijar una patente a los paquetes entre Estados, sino que pretende cobrar una contribución graduada de patentes, de acuerdo con la importancia del negocio de ferrocarriles, apreciada por sus ingresos brutos. El caso de Daniel Ball continúa siendo el más fuerte, pero en dicho caso la corte resolvió que ningún Estado podría exigir una patente a un barco dedicado al transporte de comercio entre Estados, cuando dicho barco viajaba por aguas navegables de los Estados Unidos. También hace referencia la corte al hecho de que cuando un ferrocarril constituye un ramal en el negocio entre Estados, está comprendido también en la jurisdicción del Congreso. Pero, el razonamiento en cada uno de los casos citados es el de que el barco o tren forma parte del comercio entre Estados. En ninguno de dichos casos existe tentativa alguna por el Estado de imponer una contribución al negocio realizado por el vapor o al del ferrocarril. Los casos se diferencian además por las razones a que hemos hecho referencia de que el transporte por tierra o agua dentro de los límites geográficos de

los Estados Unidos, es casi necesariamente transporte entre Estados.

Cualquiera duda que pudiera subsistir queda resuelta por la naturaleza de las alegaciones formuladas ante este tribunal. El peticionario alega que la Central Fortuna está explotando ahora un negocio de ferrocarriles en Puerto Rico. La demandada admite el hecho, pero alega que es una conductora pública de comercio entre Estados. En primer lugar, no aparece de las alegaciones que existan ingresos procedentes del negocio de comercio entre Estados y mucho menos de cuál es su proporción. Tampoco consta de las alegaciones la existencia de un transporte o tráfico continuo. Nada dicen respecto a ingresos derivados del transporte de pasajeros o carga. Quizás podemos admitir como cierto que lo que la demandada quiso expresar fué que su ferrocarril se dedicaba al comercio entre Estados, pero las alegaciones solamente expresan que la Central Fortuna "se dedica al comercio entre Estados." La Central Fortuna muy bien podría estar realizando un negocio de compañía de expreso o como agente para remitir efectos de comercio independientemente de su negocio de ferrocarril, y alegar que tal negocio es de porteador entre Estados. Creemos, en vista de las condiciones existentes en Puerto Rico, que el decir siquiera que el ferrocarril está dedicado al comercio entre Estados equivale a expresar una conclusión legal más bien que a hacer una exposición de los hechos. Además, aunque puede ser algo dudoso el hecho de si esta corte puede tomar conocimiento judicial de la significación de las palabras "Central Fortuna," es evidente, sin embargo, que era de la incumbencia de la demandada el probar no solamente que su negocio de ferrocarriles formaba parte del negocio entre Estados sino también que esta clase de patente constituía un gravamen sobre dicho negocio entre Estados.

La Ley No. 134 en cuestión, en su sección 2 dispone que el negocio o *industria* será clasificado por el Tesorero de Puerto Rico en una de las clases que más adelante se mencio-

nan, de acuerdo con la relativa importancia del mismo apreciada por el volumen de negocios realizados en Puerto Rico. Por consiguiente, aún aceptando la teoría que sustenta la demandada en su principal aspecto, este tribunal sin embargo, no podría negarse a expedir el *mandamus* puesto que esta corte no puede determinar por el mérito de las alegaciones que una parte considerable de los ingresos de la compañía de ferrocarriles procediera del comercio entre Estados. Si los ingresos del comercio entre Estados eran pocos comparados con la mayor parte de sus negocios, entonces es evidente que la clasificación del Tesorero prácticamente no estaría afectada por dicho negocio entre Estados. Ninguna corporación doméstica o extranjera que explote un negocio de ferrocarriles necesariamente local, puede impedir que Puerto Rico cobre un derecho de patente como requisito previo para llevar a cabo dicho negocio simplemente por el hecho de que una porción pequeña de sus ingresos procedan del comercio entre Estados.

La sección 12 de la ley entre otras numerosas clasificaciones determina que las compañías de ferrocarril de vapor dedicadas al servicio público pagarán contribuciones por patentes, de acuerdo con la siguiente clasificación: Primera clase, $200; segunda clase, $100; tercera, cuarta y quinta clases, $25. No existe verdadera división por la renta o ingreso y sería absurdo suponer que un ferrocarril que transporta paquetes destinados al tráfico en el Océano debe estar exento del pago de esta contribución de patentes, cuando un ferrocarril que únicamente transporte paquetes intra-insulares tiene que pagarla como requisito previo a su negocio. El estatuto impone la contribución de patentes prácticamente sobre todos los negocios en Puerto Rico y no existe distinción alguna en contra de la Central Fortuna o de cualquier otro supuesto porteador entre.Estados.

Atendidas las condiciones físicas peculiares de Puerto Rico, para poder llegar a la conclusión de que la Central Fortuna en realidad realizaba comercio entre Estados, tendría que pro-

barse que su negocio de ferrocarriles estaba de tal modo ligado al de alguna compañía de vapores que prácticamente constituyera dicho negocio una sola transacción. Aún en ese caso el negocio más bien sería a manera de un negocio de expreso que de ferrocarriles; y aún así el negocio de ferrocarriles podría ser diferenciado. El hecho de que las mercancías sean transportadas desde el continente a la isla en vapores, y entonces sean conducidas por ferrocarril a algún otro punto de la isla o *vice-versa,* no convierte el negocio realizado por un ferrocarril en comercio entre Estados. Si fuera cierta la alegación, entonces cada persona o compañía que transporte paquetes en Puerto Rico por limitado que pudiera ser su negocio, estaría dedicada al comercio entre los Estados, puesto que una gran parte de las provisiones, mercancías y materiales de construcción que se consumen en la isla proceden de los Estados Unidos, y se exporta la mayor parte del café, azúcar, frutas y tabaco producido en la isla.

La intención de la Legislatura fué fijar una patente al negocio del ferrocarril puesto que ese negocio se lleva a cabo enteramente dentro de la isla. El negocio de ferrocarriles como tal no tiene el carácter de entre Estados, o, si lo tiene, tal carácter no consta de las alegaciones.

Debe expedirse el *mandamus* en este caso.

> *Concedida la solicitud y ordenada la expedición de un auto perentorio de* mandamus *contra la demandada, para que, dentro del término de diez días, presente el certificado jurado exigido por el Tesorero de Puerto Rico.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro y Aldrey.

El Juez Asociado Sr. Hutchison no formó parte del tribunal en la vista de este caso.

HABIÉNDOSE presentado con posterioridad una moción de reconsideración de sentencia, el Juez Asociado Sr. Wolf en abril 16 de 1915, emitió la siguiente opinión del tribunal.

No obstante lo que puedan estipular las partes con respecto a los hechos, este tribunal está en el deber de tomar conocimiento judicial del hecho de que el negocio de ferrocarril, como tal, que está enteramente situado en Puerto Rico, no es comercio entre Estados. La Central Fortuna puede estar enviando paquetes a los Estados Unidos, o a cualquiera otra parte, pero el negocio de ferrocarriles se efectúa en su totalidad dentro de Puerto Rico y los ingresos derivados del mismo son necesariamente ingresos procedentes de un negocio local, o sea del de transporte de personas y paquetes en Puerto Rico. La Ley No. 134 de 1913 no impone una contribución sobre el material o instrumentos usados en el negocio entre Estados. No se obstaculiza en ninguna forma el transporte de paquetes de la costa de Puerto Rico a los Estados Unidos. No existe ningún gravamen o prohibición sobre el comercio entre Estados, ni impedimento alguno a su libre realización.

La moción de reconsideración debe ser denegada.

*Denegada la reconsideración.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro y Aldrey.

El Juez Asociado Sr. Hutchison no intervino.