THE TEXAS COMPANY (P.R.), INC., demandante y recurrente, *v*. MUNICIPIO DE MAYAGÜEZ y TESORERO DEL MUNICIPIO DE MAYAGÜEZ, demandados y recurridos.

Número 12493.
*Sometido:* 27 de mayo ·de 1959.  *Resuelto:* 25 de agosto de 1959.

*Beverley, Castro* y *López Baralt* y *R. Rodríguez Lebrón,* abogados de la recurrente; *A. Nazario Janer,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

El Municipio de Mayagüez impuso a la recurrente The Texas Co. (P. R.), Inc. una contribución en concepto de patente municipal para el año 1956–1957 por el monto de $4,240.52, bajo las disposiciones de la Ley 26 de 28 de marzo de 1914—21 L.P.R.A. secs. 621–639—.  A requerimiento del

municipio la compañía satisfizo bajo protesta la cantidad de $2,120.26 correspondiente a los pagos trimestrales de la patente vencidos el 1ro. de enero y 1ro. de abril de 1957, y radicó demanda solicitando la devolución de lo pagado. Alegó que ella tiene "un establecimiento dedicado a la venta al por mayor de productos de petróleo dentro del Municipio de Mayagüez"; que a principio del año 1956 se le impuso la contribución aludida, y que procede el reintegro porque no existía al momento de la imposición, ni existe, autoridad en ley para cobrarle la contribución por no estar el negocio suyo incluído en ninguno de los tres grupos mencionados en la sec. 2 de la Ley 26 de 1914 que autoriza la imposición en concepto de patente. La demanda está fechada el 6 de mayo de 1957. A solicitud de la propia recurrente, no existiendo controversia alguna de hecho, la Sala de Mayagüez del Tribunal Superior dictó sentencia sumariamente sosteniendo la contribución impuesta y denegando, por consiguiente, la devolución de la cantidad pagada. El Hon. Ángel Fiol Negrón, Juez, fue de opinión que teniendo la recurrente, según ella misma expresara, un establecimiento dedicado a la venta al por mayor de productos de petróleo, ella estaba sujeta a la contribución en concepto de patente bajo la disposición "Establecimientos al por mayor" contenida al principio del Grupo A de la sec. 2 de la referida ley de 1914, citando los casos de *Municipio de San Juan* v. *P. R. Coal Co.*, 28 D.P.R. 263 y *A. J. Tristani* v. *Municipio*, 76 D.P.R. 758, y negándose a aplicar el de *Cervecería India* v. *Municipio*, 77 D.P.R. 100, por considerarlo distinguible. No conforme, la recurrente interpuso el presente recurso.

Sostiene que el caso de *P. R. Coal* y el de *Tristani* han sido implícitamente revocados por el de *Cervecería India*, y más particularmente por las sentencias dictadas en los de *The Shell Co.* v. *Báez*, núm. 11,473 y *Esso Standard Oil Co.* v. *Báez*, núm. 11,534, decididos sin opinión el 30 de noviembre de 1956, revocación implícita ésta que la recurrente deduce del hecho de que en los dos últimos casos, al igual que en el

de autos, se trataba de empresas que tenían establecimientos al por mayor para la venta de productos de petróleo y, no obstante, revocamos las sentencias apeladas y anulamos la contribución impuesta aplicando los fundamentos del caso de *Cervecería India*. Concluye entonces la recurrente que ello no puede tener otra explicación sino que el Tribunal es ahora de opinión, distinto a lo anteriormente resuelto, que la frase "Establecimientos al por mayor" con que comienza el Grupo A de la sec. 2 de la Ley de Patentes se aplica solamente a los establecimientos al por mayor de aquellos negocios que expresamente se mencionan en dicho Grupo, y que la ley no autoriza imponer la contribución a aquellos otros establecimientos al por mayor de negocios no específicamente enumerados, como resulta ser la venta de productos de petróleo. (¹)

■■■ 'La sec. 2 de la Ley 26 de 14 de marzo de 1914, de ordinario conocida como "Ley de Patentes" dispone en parte como sigue:

"Sección 2.—Los negocios o industrias sobre los cuales puede imponerse la patente que prescribe esta Ley, son los siguientes:

"Grupo A.—Establecimientos al por mayor, tiendas mixtas, tiendas de mercancías secas, colmados, tiendas de provisiones, mueblerías, farmacias, droguerías, ferreterías, tiendas de sombreros, tiendas de calzado, tiendas de efectos para caballeros, librerías o establecimientos de encuadernación de libros, bazares, tiendas de bicicletas o efectos para las mismas, quincallerías, bujerías, cafés, hoteles, restaurantes, joyerías, establecimientos para la venta de automóviles o materiales para éstos o para guardar y reparar automóviles, tiendas de efectos de

---

(¹) Si bien bajo sus propias deducciones en cuanto al efecto de las sentencias dictadas en los recursos 11,473 y 11,534 de *The Shell Co.* y *Esso Standard Oil Co.* la recurrente sostiene que debe revocarse la dictada en este caso, aboga más bien, en vista del cúmulo de casos que ella dice están pendientes en los tribunales inferiores que envuelven el mismo planteamiento porque aclaremos definitivamente y disipemos la duda en cuanto a cuál debe ser la correcta interpretación de la frase aludida, si "Establecimientos al por mayor" cubre todo establecimiento donde se venden artículos de cualquier clase al por mayor, o si por el contrario está limitada a aquellos negocios o productos que se especifican a renglón seguido en el propio Grupo A.

escritorio, confiterías, salones para la venta de helados, dulce-rías, . . ." [continúa la enumeración de negocios y productos sin que se mencione la venta de productos de petróleo.]

Fijamos por vez primera el significado y el contenido de la frase "Establecimientos al por mayor" en *Municipio de San Juan* v. *P. R. Coal Co.*, supra, decidido en marzo 30, 1920, ante la contención, similar a la de la recurrente, de que el negocio de venta de carbón mineral al por mayor de aquella compañía no estaba incluído en la ley y no tributaba. Nos expresamos en ese entonces así: —28 D.P.R. págs. 264-266—

"Se ha admitido que la demandada no está comprendida en el Grupo B o Grupo C especificado más adelante bajo la sección 2, y que la única designación que es aplicable en absoluto a ella son las primeras palabras del Grupo A, o sea 'Estable-cimientos al por mayor.' La corte inferior declaró que las palabras del texto español 'establecimientos al por mayor' significaban solamente tiendas de provisiones que hacen negocios al por mayor, de tenerse en cuenta su significación ordinaria y corriente y que las leyes de patentes deben ser interpretadas estrictamente. Ahora bien, el texto inglés no está sujeto a tal limitación. '*Wholesale store*' significa cualquier establecimiento donde se venden artículos de cualquiera clase al por mayor. El texto en inglés es inequívoco, pues primero menciona '*wholesale stores*' (establecimientos al por mayor), luego '*mixed stores*' (tiendas mixtas), significando aquellos que participan de la índole de tiendas al por mayor y al detall, y entonces enumera algunas tien-das al detall y otros establecimientos. En el año 1914 la Legis-latura todavía estaba compuesta en parte de miembros cuyo idioma nativo era el inglés. El Tesorero era una de dichas per-sonas y generalmente tenía que intervenir en dichas leyes. El texto inglés hace que la ley resulte más clara, pero, en nuestra opinión, el texto español es la forma genérica de describir un establecimiento donde se venden artículos al por mayor.[2]

" *       *       *       *       *       *       *       *       *

---

[2] En efecto, una de las Cámaras Legislativas al aprobarse la Ley 26 de 1914 estaba compuesta por 6 norteamericanos y 5 puertorriqueños, siendo además norteamericano el gobernador que firmó la ley.

"Quizás en inglés las palabras *'wholesale stores'* ordinaria y vulgarmente no comprenden a un depósito de carbón mineral, pero consideradas en unión del texto español las palabras *'wholesale stores'* significan cualquier establecimiento donde se almacena carbón mineral.

" *        *        *        *        *        *        *        *

"No tenemos duda alguna, al leer ambos textos, de que la Legislatura quiso mencionar todos los lugares donde se vendiesen artículos al por mayor y ambos textos deben ser considerados. [citas] Ni tampoco tenemos duda alguna, si consideramos el texto español solamente, de que fue la intención de la Legislatura incluir a todos los establecimientos donde se venden artículos al por mayor. Debe prescindirse del significado corriente ante la significación literal cuando las palabras *'wholesale stores'* se consideran en aposición a las palabras *'mixed stores'* y a la enumeración de los establecimientos que principalmente no son al por mayor."

Resolvimos, como podrá observarse, que la disposición "Establecimientos al por mayor" constituía un renglón contributivo por sí misma, cualquiera que fuere el producto vendido, con independencia de la especificación de negocios y artículos expresamente enumerados.

La interpretación que en este caso hicimos de la Ley de Patentes creó un estado de derecho en lo que respecta al poder contributivo de los municipios que no volvió a ser cuestionado, por lo menos en este Tribunal, durante 34 años. La Asamblea Legislativa nunca repudió, mediante enmienda al estatuto, tal estado de derecho. En *A. J. Tristani* v. *Municipio*, supra, decidido el 22 de junio de 1954, por segunda vez nos enfrentamos a la alegación de que el negocio de esa contribuyente no estaba incluído en la Ley 26 de 1914 y no tributaba. Sin mayor discusión expresamos entonces por voz del distinguido compañero Pérez Pimentel: —76 D.P.R. pág. 767—

"Debemos determinar, en primer lugar, si el negocio de la apelante, contrario a lo que ella sostiene, está incluído en la Ley de Patentes Municipales, y por tanto, sujeto a contribución municipal. La cuestión ha sido resuelta ya en su contra. Bajo

el concepto de 'establecimientos al por mayor', Grupo A de la Ley de Patentes promulgada en 1914, los municipios pueden imponer tributo por patente a todo establecimiento donde se vendan artículos de cualquier clase al por mayor. *Municipio de San Juan v. P. R. Coal Co.*, 28 D.P.R. 263. El de la apelante —venta de cigarrillos y gomas de mascar al por mayor—cae dentro del concepto de 'establecimientos al por mayor.' ".

Escasamente mes y medio después, en 9 de agosto de 1954, resolvimos el caso de *Cervecería India* v. *Municipio*, 77 D.P.R. 100.([3]) Se trataba ahora de una industria, que vende su producción al por mayor en la propia fábrica o planta. El Tribunal Superior sostuvo la contribución en concepto de patente que se impuso a la cervecería fundándose en que su negocio caía bajo la disposición "Establecimientos al por mayor" del Grupo A. Revocamos la sentencia y por voz también del compañero Pérez Pimentel dijimos que si bien la fábrica o planta de la Cervecería India constituía un *establecimiento industrial* dentro del significado corriente y usual de dichas palabras, ello no significaba por sí solo que la fábrica estuviera incluída en la Ley de Patentes, y expusimos entonces que la palabra *"establecimiento"* usada en la indicada ley está cualificada a aquellos que lo sean "al por mayor" y, *que el concepto "al por mayor" no se aplica a la industria y sí al comercio*, no habiendo industrias al por mayor ni industrias al detall sino grandes o pequeñas según sea el volumen de su producción. Nos referimos a la definición de *"mayorista"* y concluímos que el concepto de "establecimiento al por mayor" *incluía a los establecimientos comerciales, mas no a los industriales*. Expresamos más adelante, a la luz del texto mismo de la ley, que no fue la intención legislativa incluir en el concepto de establecimiento al por mayor la fase de la industria cervecera consistente de la venta al por mayor del producto elaborado, primero,

---

([3]) Cf: *Yabucoa Sugar Co.* v. *Municipio*, 44 D.P.R. 348, que hasta cierto punto ya insinúa la doctrina de éste.

porque la enumeración de los establecimientos y negocios que hace la ley a continuación tales como tiendas mixtas, de mercancía seca, colmados, mueblerías, farmacias, etc., indicaba que se trataba de *establecimientos comerciales;* en segundo lugar, porque las industrias se agrupan en el Grupo B de la sec. 2 y la de cerveza no se menciona; y además, porque si todas las industrias por el solo hecho de vender al por mayor su producción estuvieran incluídas en la frase "Establecimientos al por mayor", hubiera sido innecesaria la enumeración específica de las industrias en la ley. Y como expresión final del alcance de lo que resolvíamos en ese caso expresamos ya al terminar la opinión que la Ley de Patentes no contempló que una industria dedicada a la producción o fabricación de determinados artículos tuviera dos fases independientes, la de fabricación y la de venta. Que al enumerar las industrias sujetas a patente la ley consideró que éstas producirían artículos para su venta, y que como la patente se impone sobre el volumen de negocios efectuado durante el año natural y "volumen de negocios" significa los ingresos brutos que tenga el negocio o industria, resulta meridianamente claro que la industria no tiene ingreso bruto si no vende los artículos que fabrica o produce. En otras palabras, resolvimos que *industrias* no incluídas en la Ley de Patentes no se convertían en tributables como tales bajo el renglón "Establecimientos al por mayor" por el hecho de que ellas dispongan al por mayor de su producción, porque dicho renglón comprende establecimientos comerciales, no industriales y la ley no contempla una fase de venta independiente de la fabricación. Nada hay en esta decisión incompatible o en conflicto con lo resuelto en *P. R. Coal* y en *Tristani* sobre planteamientos y hechos enteramente distintos, por lo que no cabe concluir que estos casos han quedado revocados implícitamente por el de la cervecería, ni existía razón o justificación alguna para revocarlos expresamente. Es posible que cierto lenguaje usado—77 D.P.R.

pág. 105: —"Hemos visto que la Ley de Patentes enumera los negocios e industrias que están sujetos al pago de contribución en forma de patente y a no ser que de la propia ley se desprenda que fue otra la intención de la legislatura, tal enumeración es exclusiva y quedan por tanto, fuera de la ley las demás industrias o negocios no especificados en ella" —induzca a creer con la recurrente que contrario a lo ya resuelto fuimos de opinión que ningún negocio o producto no específicamente mencionado en la ley tributa. Pero la anterior expresión debe entenderse a la luz de todo el contexto de la opinión, de los argumentos que inmediatamente la preceden así como de los hechos envueltos. También en armonía con la intención de la Legislatura, pero tal como ya se había establecido por jurisprudencia. Y si quedare duda en cuanto al significado de dicha expresión basta decir que en 22 de junio de 1955, casi un año después de la decisión de *Cervecería India* resolvimos, mediante opiniones *per curiam*, (*) los casos de *The Shell Co. (P.R.) Limited* v. *Lespier*, recursos 11,284 y 11,285 en donde se planteó la misma contención de que el negocio de la Shell, —venta de gasolina, aceites, grasas, etc.—, al por mayor, no estaba incluído en la Ley de Patentes, y una vez más ratificamos incondicionalmente la temprana interpretación que dimos a la ley en *P. R. Coal Co.* expresando: "Con posterioridad a la fecha en que la apelante radicó su alegato en estos casos, este Tribunal emitió la opinión en el caso de *A. J. Tristani Sucrs., Inc.* v. *Municipio de Mayagüez*, resuelto en 22 de junio de 1954, resolviendo en contra de la apelante las cuestiones esenciales aquí suscitadas. Ratificamos en dicho caso el de *Municipio de San Juan* v. *P. R. Coal Co.*, 28 D.P.R. 263. En su consecuencia, el negocio de la apelante es uno de los incluídos en la Ley de Patentes Municipales, bajo la denominación de 'establecimientos al por mayor'. El primer error no fue cometido."

---

(*) No aparecen publicadas en el Tomo 78 de las Decisiones.

Tal era la situación cuando en 30 de noviembre de 1956 (⁵) dictamos sentencias sin opinión en *The Shell Co.* v. *Báez* y *Esso Standard Oil Co.* v. *Báez*, recursos 11,473 y 11,534, respectivamente, revocando por los fundamentos del caso de *Cervecería India* las dictadas por el Tribunal Superior sosteniendo la contribución en concepto de patente impuesta a dichas compañías que, como en el caso de autos, se dedicaban a la venta al por mayor de productos de petróleo. Si, como expresamos anteriormente, no existía razón o justificación alguna para que los casos de *P. R. Coal* y de *Tristani* fueran revocados expresamente, o implícitamente se entendieran revocados por el de la cervecería, ni existía conflicto alguno entre esas decisiones, con mayor razón debe concluirse que las sentencias de 30 de noviembre de 1956 tampoco han revocado implícitamente dichos casos, cuanto más, si se considera que a diferencia del planteamiento envuelto en el de *Cervecería India*, estos últimos presentaban el mismo punto de derecho sobre la interpretación de la ley que presenta el de autos. La única conclusión lógica que puede hacerse, y que debemos hacer ya que un error nuestro no debe perpetuarse ni crear derechos, —Cf: Opinión de los Jueces Sres. Snyder, Ortiz y Belaval en *Agosto* v. *Javierre*, 77 D.P.R. 471, 472–73, —es que en 30 de noviembre de 1956 revocamos indebidamente las sentencias apeladas en los casos de *The Shell* y *Esso Standard Oil Co.*, aplicando a esos establecimientos comerciales los fundamentos del caso de *Cervecería India*. No pudo existir el propósito de revocar la norma de derecho sentada en *P. R. Coal Co.* que tan recientemente acababa de ser por dos veces ratificada de manera clara y sin lugar a dudas.

Pero aparte del problema de intención o propósito y de los criterios surgidos en cuanto al efecto de las sentencias dictadas en los recursos 11,473 y 11,534, ante una reexaminación independiente del planteamiento de derecho envuelto

---

(⁵) Enmendadas en 12 de diciembre de 1956 para incluir intereses..

508

en este caso debemos decir que no encontramos argumento de peso alguno para modificar la interpretación que en 1920 dimos a la Ley de Patentes y sustituirla por la interpretación que sugiere la recurrente. No estaríamos tampoco justifica-dos, en ausencia de demostración de que la doctrina sea cla-ramente errónea e insostenible en derecho, en alterar dicha interpretación para adoptar otra más restrictiva en contra del poder contributivo de los municipios, a la luz de las claras e inequívocas expresiones que de tiempo en tiempo ha venido haciendo la Asamblea Legislativa con el fin de fortalecer, antes que debilitar, la facultad contributiva de los gobiernos municipales concedida en la Ley de Patentes.(⁶)

Se ratifica una vez más, por la confusión que haya podido surgir en cuanto al efecto de las sentencias de 30 de noviem-bre de 1956 en los recursos 11,473 y 11,534, la doctrina sen-tada en *Mun.* v. *P. R. Coal Co.* considerada a la luz de lo decidido en *Cervecería India* v. *Municipio*, supra, y debe ser claro que bajo la disposición "Establecimientos al por mayor" con que comienza el Grupo A de la sec. 2 de la Ley de Paten-tes, núm. 26 de 28 de marzo de 1914, todo establecimiento *comercial* al por mayor tributa, cualquiera que sea la clase de producto o artículo que se venda en el mismo.

*La sentencia objeto de revisión será confirmada.*

---

(⁶) Véanse, sino, la Ley 437 de 15 de mayo de 1951 enmendando la sec. 99 de la Ley de Rentas Internas de 1925, particularmente su Expo-sición de Motivos; la Ley 54 de 7 de junio de 1955 y su Exposición de Motivos, vigente desde el año fiscal 1955-56; la Ley 44 de 18 de junio de 1958; el art. 82 de la Ley 2 de 20 de enero de 1956—Ley de Impues-tos sobre Artículos de Uso y Consumo de Puerto Rico—; y la Ley 75 de 25 de junio de 1959 enmendatoria de dicho art. 82. Véase también el art. 18 de la Ley 99 de 15 de mayo de 1931.