COOPERATIVA CAFETEROS DE PUERTO RICO, demandante y apelada, *v.* GOBIERNO DE LA CAPITAL y su JUNTA DE COMISIONADOS, compuesta esta última por F. A. ARRILLAGA, AMÉRICO MIRANDA, JOSEFINA O. DE BATLLE, JENARO CAPARRÓS, MIGUEL A. COLÓN, PEDRO JUAN DUMONT, VICENTE A. PÉREZ, RAMÓN E. QUIÑONES, JOSÉ N. GÁNDARA y RAFAEL A. URRUTIA, demandados y apelantes.

Número 11642.
*Sometido:* 29 de julio de 1960. *Resuelto:* 9 de febrero de 1961.

*Gilberto J. Marxuach,* abogado de los apelantes; *Héctor González Blanes,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR SERRANO GEYLS emitió la opinión del Tribunal.

El Gobierno de la Capital impuso a la Cooperativa Cafeteros de Puerto Rico una contribución de patente para el año fiscal 1953–54, ascendiente a la suma de $397.50. La Cooperativa pagó bajo protesta, formuló demanda contra la Capital y su Junta de Comisionados ante el Tribunal Superior, Sala de San Juan y solicitó la devolución de lo pagado. Luego de los trámites de rigor, el tribunal de instancia dictó sentencia en favor de la demandante.

El Gobierno de la Capital sostiene ante nos que el tribunal sentenciador cometió varios errores que dan base a la revocación de la sentencia. Se queja principalmente[1] de la negativa del tribunal a reconocerle facultad legal para imponer a la Cooperativa contribuciones por concepto de patentes municipales. Debemos, por consiguiente, resolver si el Gobierno de la Capital puede cobrarle patentes municipales a las organizaciones cooperativas en general y específicamente a la recurrida.

Las facultades del Gobierno de la Capital para imponer las mencionadas contribuciones nacen de la ley de su creación y de la ley general sobre patentes municipales. Art. 18 de la Ley núm. 99 de 15 de mayo de 1931 (*Leyes,* pág. 627; 21 L.P.R.A. sec. 421); Ley núm. 26 de 28 de marzo de 1914 (*Leyes,* pág. 181; 21 L.P.R.A. secs. 621–639); *Cervecería India* v. *Municipio,* 77 D.P.R. 100, 105–106 (1954); *Shell Co.* v. *Berrocal,* 82 D.P.R. 39 (1960). Por su sec. 1 esta última "autoriza a los concejos municipales de todos los municipios del Estado Libre Asociado de Puerto Rico para que puedan imponer y cobrar . . . a toda *per-*

---

[1] Sostiene, además, que el tribunal erró al concluir que el pago de la patente hecho por la Cooperativa fue involuntario; al tomar conocimiento judicial de la Ordenanza núm. 63 del Gobierno de la Capital; y al declarar que la Cooperativa no deriva lucro de las actividades comerciales sobre las cuales se impuso la patente.

*sona, firma, asociación, sociedad, corporación, u otra forma cualquiera de organización comercial o industrial* dedicada a ,cualesquiera de los negocios o industrias que más adelante ,se mencionan, las patentes que más adelante se enume- -ran. . ." (Énfasis suplido.) (²) No se nos cita ni conocemos razón alguna para excluir a las cooperativas de la abarcadora y cuidadosa enumeración que hace este artículo. Es ,necesario, por lo tanto, acudir a otras provisiones legales ;para comprobar si puede justificarse la exclusión. El tri- ,bunal de instancia encontró esa justificación en las disposi- ,ciones pertinentes de la Ley General de Sociedades Cooperativas de Puerto Rico, específicamente en los arts. 2($k$), subincisos H e I, 3A, 4D y 27. Ley núm. 291 de 9 de abril de 1946 (*Leyes*, pág. 687; 5 L.P.R.A. secs. 881–917).

El art. 2($k$) contiene una definición del término "Sociedad" para los efectos de la citada ley. Enumera los requisitos que deben reunir dichas sociedades, entre ellos el de no tener fines lucrativos (subinciso H). El subinciso I de ese artículo define la palabra "Suministros".(³) El art. 3 enumera los propósitos para los cuales podrán organizarse las sociedades, refiriéndose el apartado A a "Comprar en común suministros para sí, sus socios y otros patrocinadores". El art. 4 contiene las facultades de las cuales podrán gozar las cooperativas y menciona en su inciso D la de "Prestar servicio en común a sus socios y otros patrocinadores". A renglón seguido reglamenta las actividades de las sociedades que extienden sus servicios a personas que no son socios. No encontramos nada en las anteriores disposiciones indicativo de que las cooperativas estén "por su naturaleza", como dijo el juez sentenciador, exentas del pago de patentes

----

(²) El mismo lenguaje se repite en la sec. 3 de la ley. (21 L.P.R.A. sec. 623.)

(³) "Suministros incluye, sin que esto se entienda como una limitación, alimentos, equipo, maquinaria, piezas, y herramientas, así como cualquier otro artículo que una sociedad o un socio u otro patrocinador de la misma use o necesite de su negocio, arte, oficio, profesión, industria u otra ocupación o en su finca u hogar."

municipales. Ya vimos que la Ley de Patentes incluye a "cualquier organización comercial o industrial", y no exige que éstas tengan fines lucrativos. Por el contrario, su sec. 4 define el volumen de negocios (a base del cual se computa la patente) como "los ingresos brutos que tenga en cualquier municipio el negocio o industria en Puerto Rico, *sin tener en cuenta sus ganancias o beneficios.....*" (Énfasis suplido.)

█ El art. 27 de la Ley General de Sociedades Cooperativas dispone que dichas sociedades "por ser asociaciones sin fines de lucro, no estarán sujetas al pago de contribuciones sobre ingresos." El tribunal de instancia concluyó que por estar la demandante "exenta de contribución sobre ingresos no se hace extensiva a ella la contribución de patentes municipales, que en efecto es una contribución sobre el ingreso bruto." En apoyo de esta conclusión citó las secs. 3 y 4 de la Ley de Patentes, las cuales efectivamente disponen que las patentes se pagarán "sobre la base del volumen de los negocios efectuados durante el año natural" y que se entenderá por volumen de negocios "los ingresos brutos que tenga en cualquier municipio el negocio o industria. . ."

Nos parece errónea la conclusión del tribunal. Su premisa básica es, sin duda, la de que la frase "contribuciones sobre ingresos" utilizada en la Ley General de Sociedades Cooperativas no se refiere exclusivamente a las contribuciones conocidas por ese nombre, sino a cualquier contribución que, como la de patentes municipales, pueda afectar los ingresos o se mida a base de ellos. Estimamos, en primer lugar, que la frase "contribuciones sobre ingresos" tiene en derecho, en hacienda pública y en lenguaje ordinario un significado único y preciso y que no hay razón alguna para creer que el legislador la utilizara en la citada ley con otro contenido que no fuera el que le dan tanto los expertos como el ciudadano corriente. Esta conclusión la refuerza el hecho de que en la vigente Ley de Contribuciones Sobre Ingresos y en la sección titulada "Exenciones de contribución sobre corporaciones" se incluyera, refiriéndose a las organizaciones

'exentas, un apartado 12 que dice lo siguiente: "sujeto a los requisitos de la Ley núm. 291 aprobada en 9 de abril de 1946, conocida como 'Ley General de Asociaciones Cooperativas de Puerto Rico', las asociaciones cooperativas organizadas y operadas bajo las disposiciones de dicha ley." Ley núm. 91 de 29 de junio de 1954 (*Leyes,* págs. 475, 599; 21 L.P.R.A. Suplemento Acumulativo, sec. 3101). Asímismo, las patentes municipales (municipal license taxes) tienen un perfil definido y son de antiguo abolengo en la teoría y práctica de gobierno de los Estados Unidos y Puerto Rico. 2 Antieau, *Municipal Corporation Law* (1955) págs. 189–192; 9 McQuillin, *The Law of Municipal Corporations* (1950) págs. 1–525; 3 Yokley, *Municipal Corporations* (1958) págs. 260–354; *Estes* v. *City of Gadsden,* 94 So.2d 744, 747–750 (Ala. 1957). Conocidas estas realidades, nos parece enteramente irrazonable suponer, sin más prueba, que al conceder una exención de "contribuciones sobre ingresos" a las cooperativas, el legislador les estuviese a la vez otorgando otra de "patentes municipales".

En segundo término, es de notar que nuestros legisladores han sido bastante parcos en la concesión de privilegios contributivos a las cooperativas. ([4]) Estas organizaciones no gozaron de exención alguna hasta 1926, cuando por medio de la R. C. núm. 5 de 14 de julio de ese año (*Leyes,* pág. 43) se les eximió de la contribución sobre la propiedad. Esa exención ha estado en vigor, con diversas variantes, desde esa fecha. 5 L.P.R.A. sec. 906. No fue hasta 1946 y en virtud del citado art. 27 de la Ley de Cooperativas, que expresamente ([5]) se libró a todas ellas de las contribuciones

---

([4]) Véase el historial legislativo en 5 L.P.R.A. sec. 881.

([5]) Sin embargo, desde 1926 y por interpretación administrativa de la sec. 29 de la Ley de Contribuciones Sobre Ingresos de 1924, se le concedió exención a ciertas clases de cooperativas. Department of Finance, *Income Tax Regulations No. 1* (1926) págs. 157–165. La sec. 29 sólo menciona expresamente a los "bancos cooperativos". Examínese, además, 5 L.P.R.A. secs. 915 y 916, mediante las cuales se exime a la Puerto Rico Production Credit Association del pago de contribuciones sobre ingresos.

sobre ingresos. En el pasado año se les eximió del pago de derechos para la presentación e inscripción de documentos y demás operaciones en el Registro de la Propiedad. Ley núm. 114 de 12 de julio de 1960 (30 L.P.R.A. sec. 1770 d.) Por consiguiente, no hay base en los precedentes legislativos para concluir que debido a la naturaleza y funciones de estas sociedades, deban extenderse a otros tributos los privilegios que el legislador ha concedido con tanto cuidado. Esa ha sido también la experiencia en los Estados Unidos. Packel, *The Law of Cooperatives* (3a. ed. 1956) págs. 280–317. Compárese *Yakima Fruit Growers Ass'n.* v. *Henneford*, 47 P.2d 831 (Wash. 1935) con *Peninsula Light Co.* v. *Tax Commission*, 56 P.2d 720 (Wash. 1936) y *Appeal of Beaver County Cooperative Association*, 180 A. 98 (Pa. 1935).

La prueba final sobre este asunto se encuentra en el lenguaje y el historial legislativo de la Ley núm. 81 de 20 de junio de 1955 (*Leyes*, pág. 301; 5 L.P.R.A. sec. 918). Dispone lo siguiente:

"Artículo 1.—Exposición de Motivos.—Las cooperativas de consumo organizadas de acuerdo con las disposiciones de la Ley número 291, aprobada en 9 de abril de 1946, proveen una manera económica y socialmente deseable de contribuir a mejorar nuestra organización económica en lo que respecta a un adecuado sistema de mercadeo y distribución de productos. Es obvio, por consiguiente, que la política fiscal del Estado Libre Asociado ofrezca adecuados estímulos para la rápida organización y desarrollo de estas cooperativas. La ley ha permitido que esta forma de organización económica, para su subsistencia, pueda hacer negocios con personas extrañas a su organización. En cuanto a este aspecto de sus actividades las cooperativas deben ser tratadas en el mismo plano que cualquiera otra entidad económica. Sin embargo, en lo que respecta a los negocios que hagan con sus asociados, parece asímismo obvio que los ciudadanos que opten por esta forma de organización colectiva para mejorar sus condiciones de vida estén libres en la mayor medida posible de cargas contributivas. Esta ley se funda en estos principios y en la filosofía general que informa la Ley General de Sociedades Cooperativas de Puerto Rico.

"Artículo 2.—Las sociedades cooperativas de consumo organizadas debidamente de acuerdo con las disposiciones de la Ley número 291, aprobada en 9 de abril de 1946, conocida como la 'Ley General de Sociedades Cooperativas de Puerto Rico', según ha sido subsiguientemente enmendada, estarán exentas del pago de patentes municipales de acuerdo con las disposiciones de la Ley número 26 aprobada en 28 de marzo de 1914, conocida como 'Ley de Patentes Municipales', según la misma ha sido enmendada, en cuanto al volumen de negocios efectuados por dichas sociedades cooperativas con sus socios.

"Artículo 3.—Los municipios, incluyendo el Gobierno de la Capital, impondrán y cobrarán patentes municipales a las cooperativas de consumo sobre el volumen de negocios que efectuaren con otras personas."

Como podrá observarse, las citadas disposiciones conceden una exención del pago de patentes municipales a una sola clase de cooperativas—las de consumo—, por razones especiales que constan en la Exposición de Motivos, y únicamente en cuanto "al volumen de negocios efectuados por dichas sociedades cooperativas con sus socios." Es obvio que si el legislador hubiese creído que la exención de contribuciones sobre ingresos libraba a todas las cooperativas del pago de patentes municipales, no hubiese tenido necesidad alguna de aprobar esa ley. El historial legislativo de esa medida comprueba que la Asamblea Legislativa la aprobó sabiendo que la exención del pago de patentes municipales no se había concedido a cooperativa alguna, incluyendo a las de consumo. En los informes de las comisiones y en el debate sobre el proyecto se comprobó que las cooperativas, aun las de consumo, estaban pagando las patentes municipales y se estableció claramente que la nueva exención beneficiaría sólo a las de consumo y únicamente en cuanto a las transacciones de éstas con sus socios. *Diario de Sesiones*, (1955) Vol. VI, Tomo III, págs. 1638–1640; Tomo IV, pág. 2141.

Por razón de todo lo expuesto, fallamos que la recurrida no estaba exenta del pago de patentes municipales en el año fiscal 1953–54, si estaba dedicada a uno de los negocios d

industrias enumeradas en la Ley de Patentes. Debemos, por consiguiente, examinar las actividades de la recurrida sobre las cuales impuso la patente el Gobierno de la Capital.

 Se trata de un negocio de ventas al por menor ubicado en el sector de Hato Rey, adscrito para fines de administración a la oficina de Pueblo Viejo, y que es una de nueve dependencias de un departamento de suministros(6) creado por la Cooperativa con el propósito de ofrecer a los agricultores, socios y no socios, la oportunidad de comprar ciertos productos a precios reducidos. En dicho negocio se vendían (la sucursal fue descontinuada en mayo de 1954) pollos, alimentos de aves, pinturas, alimentos de ganado, semillas y "una serie de misceláneas para el agricultor, pero especialmente el negocio era de pollitos bebé." Una vez establecido que la Cooperativa, por el sólo hecho de serlo, no está exenta del pago de patentes municipales, corresponde resolver si está exento un negocio de esta índole, independientemente de quien lo posea y administre. El tribunal de instancia concluyó, sin mayor explicación, que la descrita actividad "no cae en ninguno de aquellos negocios enumerados en la Sección 2 de la Ley núm. 26 de 28 de marzo de 1914" y específicamente que no es un "establecimiento al por mayor" o una "tienda mixta".

La citada sec. 2 dispone lo siguiente:

"Los negocios o industrias sobre los cuales puede imponerse la patente que prescribe esta ley, son los siguientes:

"Grupo A.—Establecimientos al por mayor, tiendas mixtas, tiendas de mercancías secas, colmados, tiendas de provisiones,

---

(6) En su demanda, la recurrida alegó que "la imposición y cobros contributivos hechos no proceden, en el presente caso, en razón a que la demandante opera su negocio principal en el Municipio de Ponce; y no siendo los negocios de Cooperativa Cafeteros de Puerto Rico, en su establecimiento de Ponce, distintos ni separados, de aquel establecimiento por el cual cobra ahora el Gobierno de la Capital, la imposición y cobro contributivos notificados son ilegales". Se alegó también que la Junta de Comisionados había incluído en su cómputo ventas efectuadas en otros municipios. No obstante, la prueba ofrecida sobre estos extremos es claramente insuficiente para permitirnos realizar la exploración que recientemente hicimos en *Shell Co.* v. *Berrocal,* supra.

mueblerías, farmacias, droguerías, ferreterías, tiendas de sombreros, tiendas de calzado, tiendas de efectos para caballeros, librerías o establecimientos de encuadernación de libros, bazares, tiendas de bicicletas o efectos para las mismas, quincallerías, bujerías, cafés, hoteles, restaurantes, joyerías, establecimientos para la venta de automóviles o materiales para éstos o para guardar y reparar automóviles, tiendas de efectos de escritorio, confiterías, salones para la venta de helados, dulcerías, establecimientos para la venta de efectos de óptica, dentales o eléctricos, establecimientos para la venta de madera en bruto o elaborada, casas de huéspedes, fondas, puestos de leche, salones públicos de billar o de bolos, teatros, cinematógrafos y espectáculos semejantes para diversión del público, relojerías, camiserías, talleres para componer zapatos con maquinaria, carpinterías, trenes de lavado al vapor o fuerza eléctrica, fábricas de hielo, hojalaterías, panaderías, establecimientos para la venta de objetos de plomería, barberías, establecimientos fotográficos, casas de empeño, agencias funerarias, imprentas o casas editoras, talleres de herrar, caballerizas dedicadas a cuidar o alquilar caballos y coches, transporte de personas o carga, mediante pago por automóviles, carros, carretas, coches o quitrines, servicio de expreso, vendedores ambulantes, establecimientos de limpieza, tintorerías, herrerías.

"Grupo B.—Bancos, casas de banca particulares, plantas de alumbrado o fuerza eléctrica, ferrocarriles, tranvías eléctricos, tranvías de sangre, almacenes públicos, hipódromos, compañías de teléfono, hornos de cal, fundiciones, litografías, aserraderos al vapor y movidos por fuerza eléctrica o hidráulica, talleres de máquinas, tenerías, tahonas para pilar y lustrar café, muelles particulares, compañías o agencias de anuncios comerciales, fábricas de sombreros movidas por maquinarias, fábricas de conservas alimenticias y fábricas que fabriquen cualquiera de los siguientes artículos: chocolate, baúles, fósforos, aguas de soda y carbonatadas, pastas para sopa, jabón, velas, colchones, aceite de malagueta, aceite de castor, aceite de coco, arneses, sillas de montar, carros, coches, carretones, mosaicos, losetas y otros productos de cemento, ladrillos, gas, efectos de alfarerías y cajas de tabacos.

"Grupo C.—Las industrias de molinos de azúcar y mieles y los negocios de corredores, comerciantes comisionistas, agentes con oficinas permanentes y corredores de bienes raíces." ([6a])

En *Cervecería India, Inc.* v. *Municipio*, supra, resolvimos, que "la Ley de Patentes enumera los negocios e industrias que están sujetos al pago de contribución en forma de patente y a no ser que de la propia ley se desprenda que fue otra la intención de la Legislatura, tal enumeración es exclusiva y quedan, por tanto, fuera de la ley las demás industrias o negocios no especificados en ella". (Pág. 105.) Por lo tanto, es necesario examinar las clasificaciones contenidas en la citada sec. 2 con el propósito de ver si el negocio de la recurrida está o no comprendido en una de ellas. Descartamos de inmediato los Grupos B y C porque comprenden negocios e industrias muy alejados del que nos interesa. Asímismo descartamos la clasificación de "establecimientos al por mayor" del Grupo A, ya que la prueba demuestra que el negocio de la recurrida es uno de ventas al por menor. Tampoco encontramos en las demás clasificaciones de ese grupo que se refieren a negocios específicos, una que cuadre perfectamente al de la recurrida, aunque sí sabemos que los productos que ella expende pueden adquirirse, por separado, en colmados, tiendas de provisiones y ferreterías.

Resta, por consiguiente, examinar la clasificación denominada "tiendas mixtas". No hemos hallado en la ley ni en otras expresiones legislativas, definición alguna de ese término. En la jurisprudencia de este Tribunal existe un solo precedente que ofrezca una explicación, aunque por vía *de dictum*. En *Municipio de San Juan* v. *Porto Rico Coal, Inc.*, 28 D.P.R. 263 (1920) se planteó el problema de si un negocio donde se vendía carbón mineral al por mayor era o no un "establecimiento al por mayor" de acuerdo con la ley de patentes. A fin de hallar el significado de ese último término, dijimos: "El texto en inglés es inequívoco, pues pri-

---

([6a]) El art. 31 de la nueva Ley Municipal concede a los municipios la facultad de incluir a otros negocios o industrias. Ley núm. 142 de 21 de julio de 1960 (21 L.P.R.A. sec. 1173(6)).

62

mero menciona 'wholesale stores' (establecimientos al por mayor), luego 'mixed stores' (tiendas mixtas), significando aquellos que participan de la índole de tiendas al por mayor y al detall, y entonces enumera algunas tiendas al detall y otros establecimientos." (Pág. 264.) (⁷)

Tenemos ahora la oportunidad de considerar el problema directamente y con mayor detenimiento. Nos parece demasiado estrecho el criterio que limita el significado de la frase "tiendas mixtas" únicamente a aquellas donde se venden artículos tanto al por mayor como al menudeo. Tiene, en primer término, un fundamento bastante artificial que eleva el orden sintáctico a la categoría de propósito legislativo, y por lo tanto, fija el significado de la ley a base de la manera en que han sido colocadas las palabras. La debilidad de ese método de interpretación es conocida y ha sido señalada por notables autoridades en varias ocasiones. Crawford, *The Construction of Statutes* (1940), págs. 337–338; Landis, *A Note on Statutory Interpretation*, 43 Harv. L. Rev. 886, 892 (1930); 2 Sutherland, *Statutes and Statutory Construction* (1943), págs. 393–394. Además, aun dentro de los estrechos confines de ese modo mecánico de interpretar, nos parece forzado decir que el sitio que ocupa la frase "tiendas mixtas" obliga a considerarlas como "tiendas al por mayor y al detall".

En segundo lugar, la citada interpretación es contraria al sentido legal y ordinario de las palabras, tanto en inglés como en español. En ambos idiomas la palabra "tienda" (store) significa "casa, puesto o paraje donde se venden al público artículos de comercio".(⁸) La palabra "mixta" (mixed) significa "mezclado e incorporado con una cosa" o

(⁷) En *The Texas Company (P. R.), Inc.* v. *Municipio*, 81 D.P.R. 499, 502 (1959) copiamos este lenguaje a la letra, pero también como parte de una explicación del término "establecimientos al por mayor".

(⁸) 29 *Enciclopedia Jurídica Española* 853–854; Real Academia Española, *Diccionario de la Lengua Española* (1956), pág. 1259; *Black's Law Dictionary* (1951 pág. 1589; *Webster's New Collegiate Dictionary* (1958) pág. 836.

"formado por mezcla o amalgama; participando de la naturaleza, carácter o atributos legales de dos o más clases".([9])

Finalmente, la aplicación lógica del criterio expresado en la citada sentencia de *Porto Rico Coal, Inc.* llevaría a una interpretación absurda de las clasificaciones incluídas en el Grupo A. Si la frase "tiendas mixtas" se refiere únicamente a establecimientos que venden al por mayor y al por menor, entonces cada una de las clasificaciones siguientes es exclusiva y el simple ardid de crear un negocio en el cual se vendan artículos de dos o más clasificaciones haría inoperante la Ley de Patentes Municipales en lo que a ese negocio se refiere.([10]) Así por ejemplo, bastaría vender calzado y sombreros en el mismo establecimiento o joyas y drogas para librarse del pago del impuesto. Las tiendas por departamentos estarían, desde luego, totalmente exentas. La organización comercial moderna no es, sin embargo, tan simple, como tampoco lo es la mente de los legisladores. Tomadas las palabras en su sentido legal y ordinario y enmarcadas dentro del propósito legislativo de cubrir el mayor número posible de negocios, el cual se desprende de la larguísima enumeración contenida en la sec. 2 de la Ley de Patentes Municipales, la frase "tiendas mixtas" debe entenderse que incluye tanto establecimientos que venden al por mayor y al menudeo, como establecimientos donde se expenden artículos de diversa índole y que pertenecen a las distintas clasificaciones contenidas en el Grupo A de la sec. 2.([11]) Por consiguiente, el

([9]) Real Academia Española, *ob. cit.* pág. 884; 2 Alonso, *Enciclopedia del Idioma* (1958) pág. 2856; Black's *Law Dictionary*, pág. 1154; *Webster's New Collegiate Dictionary*, pág. 539.

([10]) La sec. 7 de la Ley de Patentes Municipales (21 L.P.R.A. sec. 627) dispone que: "Todo comerciante que dentro de un mismo establecimiento se dedique a negocios comprendidos en más de un grupo, pagará sobre la base del volumen total de los negocios hechos en cada grupo, al tipo prescrito en cada caso." Como podrá observarse, esta disposición reglamenta los establecimientos que se dediquen a negocios comprendidos *en más de un grupo*, de los tres que la sec. 2 provee, pero no puede aplicarse a los establecimientos que se dedican a negocios comprendidos en más de una clasificación dentro de un grupo.

([11]) Creemos que aun en ausencia de la frase "tiendas mixtas" sería irrazonable pensar que el legislador, mediante la enumeración de ciertos

negocio de la recurrida es una "tienda mixta" y fue válida la imposición de patentes que por esa actividad le hizo el Gobierno de la Capital. ([12])

■ En vista de este fallo, se hace innecesario resolver los demás planteamientos del recurso. Debemos añadir, sin embargo, que carece de méritos la alegación de inconstitucionalidad que hace la recurrida contra la Ley de Patentes Municipales, fundándose en que dicha ley impone una contribución progresiva sobre el ingreso bruto y viola, por consiguiente, las garantías de uniformidad, igual protección de las leyes y debido procedimiento de ley. La validez de contribuciones de esta índole es lugar común en nuestro derecho constitucional. *Pueblo* v. *Subirá*, 27 D.P.R. 615, 618 (1919) ; 2 Antieau, *ob. cit.* supra, pág. 190; 9 *McQuillin, ob. cit.* supra, págs. 77–80; *Langston* v. *City of Danville*, 54 S.E.2d 101 (Va. 1949) ; *Davis* v. *Ogden City*, 215 P.2d 616, 624 (Utah 1950) ; *Brodhead* v. *Borthwick*, 174 F.2d 21 (9 Cir. 1949), cert. denegado, 338 U.S. 847 (1949) ; *Pacific Telephone & Telegraph Co.* v. *City of Seattle*, 21 P.2d 721, 723 (Wash. 1933), 291 U.S. 300 (1934) ; Cf. *Greenleaf & Crosby Co.* v. *Coleman*, 158 So. 421 (Fla. 1934) ; *Ex parte Mehlman*, 75 S.W.2d 689 (Tex. 1934).

*Se revocará la sentencia apelada y se dictará una nueva sentencia declarando sin lugar la demanda.*

Los Jueces Asociados señores Hernández Matos y Blanco Lugo no intervinieron.

---

negocios en cada grupo, tuvo el propósito de eximir del impuesto a los establecimientos en los cuales se combinaran negocios comprendidos en más de una clasificación dentro de un mismo grupo.

([12]) En su alegato, el recurrente Gobierno de la Capital concedió "que las actividades comerciales a que se dedica la demandante en su departamento de suministros o almacén no están incluídas en la Ley de Patentes de 1914. . ." Hace escasamente dos meses nos enfrentamos a una situación idéntica a ésta. En *Coll* v. *Picó*, 82 D.P.R. 27, 36–38 (1960) luego de un reflexivo análisis resolvimos que "ninguna estipulación o admisión de las partes puede privar a un tribunal de su facultad de interpretar la ley . . ." y que "la función de hallar el derecho es privativa del juez y en virtud de esa facultad el juez está en libertad de aplicar la norma que estime pertinente y adecuada, aunque sea separándose de las alegaciones, admisiones o acuerdos de los litigantes."