ZERBE PENN ADVERTISING CO., INC. y YOUNG & RUBICAM (P.R.) CORP., demandantes y recurrentes, *v.* JOSÉ A. BERROCAL, en su carácter de TESORERO DEL GOBIERNO DE LA CAPITAL DE P. R., demandado y recurrido.

*Número:* 390    *Resuelto:* 30 de noviembre de 1962

*Sifre, Ruiz Suria & Sifre,* abogados de los recurrentes; *Adelaida Vicente de Souffront* y *Gerardo Muñiz Dones,* abogados del recurrido.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Las cuestiones planteadas en este recurso giran en torno a la determinación de cuál es la base adecuada para fijar el volumen de negocios de las recurrentes a los efectos de la imposición de la contribución por patentes municipales dispuesta por la Ley Núm. 26 de 28 de mayo de 1914, según ha sido subsiguientemente enmendada, 21 L.P.R.A. secs. 621 a 639.(1)   Zerbe–Penn Advertising Co., Inc. y su sucesora Young & Rubican (P.R.) Corp., agencias de publicidad y anuncios comerciales, constituyen un negocio o industria clasificado en el grupo B de la sección 2 de la ley mencionada, 21 L.P.R.A. sec. 622.

En términos generales, dichas agencias *prestan servicios* a sus clientes en la preparación de los presupuestos para fines de publicidad; una vez aprobada la erogación de los gastos, la agencia coloca los anuncios, gestiona y contrata el tiempo y espacio necesarios con los distintos medios de publicidad—prensa, radio, televisión, etc.— Los clientes pagan a la agencia el importe total del anuncio o publicidad efectuada, incluyendo el costo del medio publicitario, otros gastos incidentales incurridos en la preparación del anuncio, y el talento vivo utilizado, si ese fuere el caso.   La remuneración o compensación de las agencias se calcula usualmente a base de un quince por ciento del costo total de la publicidad efectuada.   De la prueba presentada se deduce que las agencias "reciben y pagan todos los dineros envueltos en los diversos contratos y reciben [del medio publicitario] o retienen el quince por ciento del costo total."   Así, por ejemplo, cuando el medio publicitario paga a la agencia una comisión inferior a la indicada, el cliente satisface la diferencia hasta el por ciento indicado.

---

(1) La Ley Municipal de 1960, Núm. 142 de 21 de julio de 1960, 21 L.P.R.A. sec. 1101 *et seq.*, no afectó la facultad para la imposición de patentes concedida a los municipios por la Ley Núm. 26 de 1914.   Véanse, artículos 31 y 50, 21 L.P.R.A. secs. 1173 y 1288.

Durante todos los años envueltos en los distintos pleitos que fueron consolidados a los fines de decisión, el Gobierno de la Capital le ha impuesto a las recurrentes una contribución por patentes calculada sobre el importe total de los contratos por ellas efectuados para beneficio de sus clientes. Las contribuyentes sostienen que a los fines de la imposición procede considerar únicamente el monto de las comisiones recibidas, excluyéndose a tal efecto el costo de los medios de publicidad y el talento vivo.[2] El tribunal de instancia falló a favor del municipio fundándose en que la sección 4 de la Ley 26, 21 L.P.R.A. sec. 623, indica que se entenderá por volumen de negocios los ingresos brutos que tenga en cualquier municipio el negocio o industria de las operaciones procedentes que allí realiza,[3] sin tener en cuenta sus ganancias o beneficios."

La resolución de este recurso depende, pues, de la determinación de lo que constituye el "volumen de negocios" de las recurrentes. La sección 4 de la Ley de Patentes, en cuanto se refiere a las agencias de publicidad, no contiene una referencia específica a ello, como en el caso de los bancos, las tiendas y casas de comercio, las empresas de transporte terrestre, servicios telefónicos y eléctricos, y los agentes comisionistas o corredores. Debemos atenernos, por tanto, a

---

[2] Las partes estipularon que el "volumen de negocios" a considerarse según sus respectivas posiciones es como sigue:

| Año | Según la Capital | Según las Agencias |
|---|---|---|
| 1954–55 | $   549, 000 | 79, 968. 13 |
| 1955–56 | 625, 000 | 89, 827. 58 |
| 1956–57 | 787, 000 | 109, 421. 58 |
| 1957–58 | 815, 000 | 166, 691. 07 |
| 1958–59 | 1, 109, 000 | 166, 691. 07 |
| 1959–60 | 1, 234, 000 | 185, 100. 00 |

[3] Para lo que se entendía por volumen de negocios de un establecimiento al por mayor que tenía establecimientos auxiliares fuera del municipio donde radica la casa principal del mayorista, véase, *Shell Co. (P.R.) v. La Capital*, 82 D.P.R. 39 (1960), dejado sin efecto mediante la Ley Núm. 93 de 25 de junio de 1962 (Leyes, pág. 261), que enmendó las secciones 1 y 4 de la Ley de Patentes Municipales.

la definición general, según regía para los años contributivos aquí envueltos, (⁴) que dice: "se entenderá por volumen de negocios . . . los ingresos brutos que tenga en cualquier municipio el negocio o industria procedentes de las operaciones que realiza en Puerto Rico, sin tener en cuenta sus ganancias o beneficios . . ." y añade, "el monto de los ingresos habidos por cualquier negocio hecho o *servicio prestado*, de acuerdo con la naturaleza del negocio o industria establecido." ▇

A nuestro juicio las citadas disposiciones están dirigidas a significar que el importe de la contribución recae sobre ingreso bruto y no sobre ingreso neto—de ahí la referencia a que el volumen de negocios se determina irrespectivamente de las ganancias o beneficios—, y a distinguir —por la naturaleza del negocio o industria— entre el monto de ingresos cuando se originan por la realización de un negocio o por la prestación de un servicio. No es necesario elaborar demasiado para concluir que una agencia de publicidad se dedica esencialmente a la prestación de servicios y que las operaciones que realiza son aquellas relacionadas con la prestación de estos servicios, siendo, por ende, su volumen de negocios, la cantidad total que recibe por concepto de compensación o remuneración por sus gestiones o esfuerzos. ▇

En *Compañía Azucarera del Toa* v. *Municipio de Toa Baja*, apelación núm. 11801, confirmamos mediante sentencia de fecha 30 de junio de 1958, la determinación del tribunal de instancia al efecto de que a los fines de la imposición de patente municipal a un ingenio azucarero no podía incluirse

---

(⁴) Como se indica en el escolio anterior, esta sección fue enmendada en 1962, pero fue a los únicos fines de conformarla con la enmienda a la sección 1, al efecto de que " cuando se trate de negocios o industrias con oficina principal establecida en determinado municipio y manteniendo otras organizaciones comerciales o industriales, oficinas de ventas, sucursales o almacenes haciendo negocios en otros municipios que no sea donde radica la casa principal, la patente municipal debe ser impuesta por cada municipio... a base del volumen de negocios realizado por o a nombre de la casa principal en dicho municipio."

como parte de su volumen de negocios el importe de la azúcar elaborada que correspondía a los colonos, y que solamente podía considerarse la cantidad que retenía el molino, de acuerdo con las disposiciones expresas de la ley, como su compensación por la molienda. Como se dijo por el tribunal sentenciador, ". . . siempre había que concluirse que la central recibe a cambio de sus servicios sólo el valor en dinero que representan los azúcares y las mieles que le corresponden . . . ya que ella nunca adquiere título de propiedad sobre, ni le pertenecen, las participaciones del colono . . . . No constituiría parte de su volumen de negocio . . . el valor de la participación correspondiente al colono." Con mayor razón aún, en el caso de las agencias de publicidad no podemos atribuirles como parte de su volumen de negocios las cantidades que representan el costo del anuncio; éste forma parte propiamente del volumen de negocios del medio publicitario. Es por eso que la pretendida comparación con el agente comisionista que vende mercancías a comisión es de todo punto improcedente. La agencia de publicidad presta servicios, no vende productos. En todo caso, según la norma de hermenéutica que expusimos en *Cervecería India* v. *Municipio*, 77 D.P.R. 100 (1954), procedería una interpretación restrictiva en cuanto al alcance de la facultad impositiva.[5]

Como en la estipulación presentada que dio margen a la sentencia del tribunal a quo se hace referencia a que existe controversia sobre si ciertos pagos realizados por las recu-

---

[5] Nuestras infrecuentes opiniones en relación con esta materia no arrojan luz alguna sobre el asunto planteado en este recurso. En relación con otros aspectos de interpretación de la Ley de Patentes, véanse, *Municipio de Mayagüez* v. *Tribunal Superior*, 85 D.P.R. 785 (1962); *Cooperativa Cafeteros* v. *La Capital*, 82 D.P.R. 51 (1961); *Shell Co. (P.R.)* v. *La Capital*, 82 D.P.R. 39 (1960); *Texas Co. (P.R.) Inc.* v. *Municipio*, 81 D.P.R. 499 (1959); *Esso Standard Oil Co. (P.R.)* v. *La Capital*, 80 D.P.R. 152 (1951); *Cervecería India* v. *Municipio*, 77 D.P.R. 100 (1954); *A. J. Tristani* v. *Municipio*, 76 D.P.R. 758 (1954); *San Miguel & Cía.* v. *Diez de Andino, Tes.*, 71 D.P.R. 344 (1950); *Compañía Cervecera* v. *Mu-*

rrentes fueron o no voluntarios,(⁶) por haberse efectuado anticipadamente, y si otros se hicieron fuera de término, y en ausencia de prueba sobre el particular, en *lugar de revocar la sentencia dictada en 16 de agosto de 1960 en los casos consolidados, nos limitaremos a dejarla sin efecto y a devolver los casos al tribunal de instancia para cualquier ulterior disposición compatible con los términos de esta opinión.*

nicipio, 65 D.P.R. 594 (1946); *Yabucoa Sugar Co.* v. *Municipio,* 44 D.P.R. 348 (1933); *Pueblo* v. *Paz,* 35 D.P.R. 813 (1926); *Fajardo Development Co.* v. *Camacho, Comisionado,* 35 D.P.R. 355 (1926); *El Pueblo* v. *Barnés,* 28 D.P.R. 907 (1920); *Mun. de San Juan* v. *P. R. Coal Co.,* 28 D.P.R. 263 (1920); *El Pueblo* v. *Subirá,* 27 D.P.R. 615 (1919); *El Pueblo* v. *Garzot,* 24 D.P.R. 231 (1916); *El Pueblo* v. *Central Fortuna,* 22 D.P.R. 106 (1915).

(⁶) La defensa sobre el carácter voluntario del pago se adujo en los pleitos CS-54-4311 (trimestres 1 y 2 del año 1954–55), CS-56-708 (tercer trimestre año 1955–56) y CS-56-5466 (trimestre 1 y 2 del año 1956–57). Véase, *Compañía Cervecera* v. *Municipio,* 65 D.P.R. 594 (1946).