MOISÉS SANTIAGO VASSALLO, ETC., demandantes-recurrentes;
v. SEARS, ROEBUCK DE PUERTO RICO, INC., demandada-recurrida.

*Número:* R-74-160      *Resuelto:* 24 de septiembre de 1974

---

*Ismael Cardona,* abogado de los recurrentes; *Carlos A. Pesquera,* abogado de la recurrida.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

Nos toca comenzar a analizar aquí una difundida y poderosa institución de nuestra vida económica, la tarjeta de crédito. La misma tiene muchas modalidades y son múltiples y complejos los problemas jurídicos que puede suscitar. Esta

opinión tan solo roza necesariamente unas pocas facetas de materia tan vasta.

En octubre de 1971 los recurrentes, los esposos Santiago, poseedores de una tarjeta de crédito de la recurrida (Sears), acudieron a un establecimiento de ésta y compraron varios artículos. Al intentar pagar con su tarjeta se les informó que debían ir al departamento de crédito. Allí se les indicó, en presencia de varias personas, que su cuenta tenía atrasos. La empleada a cargo, al dirigirse a ellos, hacía gestos y concluyó diciéndoles que no podían llevarse la mercancía.

Señaló también el tribunal de instancia en sus determinaciones de hechos que como consecuencia de la espera y la actitud de la empleada, la señora Santiago comenzó a llorar, le dieron vómitos y tuvo otros trastornos. Durante la semana siguiente comenzó a mejorar.

Según la evidencia documental (Exhibit 1 de ambas partes), los recurrentes habían tenido tiempo antes retrasos en su cuenta. Como luego le escribió el gerente de Sears a los señores Santiago, sin embargo, en marzo de 1972, "Al momento de usted hacer la compra que fue en octubre 9, 1971 la cuenta estaba al corriente y normalmente esto es una aprobación rutinaria." Explicando el error cometido, señalaba el señor gerente que "estoy seguro que esto ocurrió debido a la falta de comunicación entre la persona que le atendió y la sección de aprobación." Terminaba diciéndoles a los recurrentes el funcionario de Sears que "Debido a su buen récord como cliente en el pasado, deseo invitarlo a usar su cuenta y estoy seguro que haremos todo lo posible para servirle mejor."

El tribunal de instancia resolvió que "Si bien la parte demandante ha probado algún daño no encontramos que la conducta de la demandada encaje dentro de los conceptos de culpa o negligencia." A base de tal determinación se declaró sin lugar la demanda.

Las tarjetas de crédito pueden ser de índole multilateral, como las que expiden compañías que se dedican inci-

dental o primordialmente a dicha actividad y les ofrecen a sus suscritores la extensión de crédito en diversos establecimientos pertenecientes a terceros con quienes han contratado a tales efectos. Las expedidas por entidades bancarias constituyen una versión de éstas que puede presentar problemas especiales. Reiter, Ronald A., *Bank credit cards and enterprise liability*, 21 U.C.L.A. L. Rev. 278 (1973). También existen las bilaterales, como la envuelta en el caso presente, en que una compañía le extiende crédito bajo determinadas circunstancias en su propio establecimiento o establecimientos al tenedor. Al amparo de ambas modalidades ha experimentado considerable auge otra institución, la compañía investigadora de crédito, la que plantea también una serie de cuestiones de gran interés. Véase: Sharp, John M., *Credit Reporting and Privacy—The Law in Canada and the U.S.A.*, Toronto, 1970. De los autos no surge, sin embargo, que este último tipo de organización desempeñe rol alguno en este litigio.

El crecimiento extraordinario en las últimas décadas de las ventas a crédito a consumidores que no son comerciantes se cuenta entre los desarrollos económicos de mayor importancia en este siglo. En 1930, dicho crédito alcanzaba en Estados Unidos la suma de $5,800,000,000. En 1969, esta cantidad montaba a $112,000,000,000. Note, *Protecting the Subjects of Credit Reports*, 80 Yale L.J. 1035, n. 1 (1971). En Puerto Rico, aunque no existen datos completos, la magnitud del fenómeno es comparable. Los préstamos individuales efectuados tan solo a través de tarjetas de crédito bancarias aumentaron más de cincuenta veces de 1968 a 1972.[1] Aunque no surge de los autos, consta de documentos fehacientes, ofrecidos al Congreso de Estados Unidos por el propio presidente de la Junta de Directores de Sears, el papel que juega en dicha compañía la tarjeta de crédito. En 1972, las ventas totales a crédito de Sears montaron a seis mil doscientos setenta y

---

[1] Informe Económico al Gobernador 1972—Junta de Planificación, pág. 136.

tres millones de dólares, lo que representó el 52.3% de todas las ventas realizadas. (²)

El aumento, como es natural, ha provocado el interés tanto del Congreso de los Estados Unidos como de la Asamblea Legislativa de Puerto Rico y ha habido esfuerzos de reglamentación especial. Véanse: Public Law 90–321, May 29, 1968, 82 Stat. 146, 15 U.S.C.A. sec. 1601 *et seq.;* 12 C.F.R. 226.1 *et seq.;* y la Ley Núm. 68 de 19 de junio de 1964, según enmendada, 10 L.P.R.A. sec. 731 *et seq.*

La tarjeta de crédito se ha convertido de hecho en un nuevo tipo de moneda, moneda de circulación restringida pero que también requiere sólidas reservas de otro género. Como la responsabilidad de crear y mantener estas reservas recae en este caso en los usuarios o consumidores y no en el Estado, el perfil que presenta la nueva institución tiene rasgos familiares. Estamos simplemente ante una nueva técnica para invertir y facilitar un antiguo uso: las compras a crédito.

A pesar del auge de las tarjetas de crédito en Estados Unidos, la jurisprudencia respecto a situaciones como la presente no es abundante y existe diversidad de criterios sobre cómo resolver el problema. Algunos tribunales le niegan al consumidor, por estimarlo nocivo a la buena marcha de los negocios, la posibilidad de fundar una causa de acción en casos como el que nos ocupa o análogos al mismo. *Jordan* v. *J. C. Penney Co.,* 152 S.E.2d 786 (Ga. 1966), *City Stores Co.* v. *Henderson,* 156 S.E.2d 818 (Ga. 1967) ; *Jennings* v. *American Express Co.,* 338 F.2d 22 (5th Cir. 1964). Otros adoptan una posición distinta. *Southeast Bancard Association* v. *Woodruff,* 184 S.E.2d 191 (Ga. 1971) ; *Hill* v. *American Express Co.,* 184 S.E.2d 115 (S.C. 1971) ; *Ratner* v. *Chemical Bank New York Trust Co.,* 329 F.Supp. 270 (D.C.N.Y. 1971).

(²)*Inaccurate and Unfair Billing Practices,* Hearing before the Subcommittee on Consumer Credit of the Committee on Banking, Housing and Urban Affairs, U.S. Senate, 93rd Cong., 1st Sess., on S. 1630 and S. 914, Government Printing Office, Washington, 1973, pág. 103 (citado aquí como "U.S. Senate Report").

Existe confusión también en la jurisprudencia estadounidense sobre la identificación de la figura jurídica bajo examen y especialmente sobre la naturaleza de la acción a que puedan dar pie unos hechos como los presentes. En *Hill*, supra, se resolvió que la acción es de índole contractual y que no cabe aplicar por tanto, el término de prescripción extintiva referente a las acciones de daños y perjuicios. *City Stores*, supra, consideró que el contrato celebrado, si alguno, es de orden unilateral y carente de causa. Afirmó el tribunal en dicho caso que una tarjeta de crédito no monta a más que a una oferta para que pueda comprarse a préstamo. Otros de los casos citados hablan tan sólo en términos de difamación u otros actos torticeros. Es de advertir, sin embargo, que la jurisprudencia norteamericana está en la actualidad comenzando a mostrar mayor inclinación a proteger el derecho de los consumidores. Es así como se acaba de eliminar en algunos tribunales el privilegio condicional que tradicionalmente se les venía reconociendo a los negociados de investigación de crédito. *Hood* v. *Dun & Bradstreet*, 486 F.2d 25 (5th Cir. 1973), *cert. den.*, 42 U.S. L.W. 3523 (18 de marzo de 1974); Wicker, W.B., *Conditional Privilege for Credit Reporting Agencies Rejected*, 45 Miss. L.J. 529 (1974); *cf.* Note, *Consumer Protection: Regulations and Liability of the Credit Reporting Industry*, 47 Notre Dame Law. 1291, 1297 (1972).

El asunto, no obstante, pertenece claramente al ámbito del derecho civil y es bajo sus normas que debe resolverse. La tarjeta de crédito no ha sido objeto de análisis especial frecuente por los comentaristas, pero se ha escrito suficientemente sobre instituciones comparables para derivar las pautas necesarias.

La tarjeta de crédito, tanto en su forma multilateral como en la bilateral, es a todas luces una versión de la figura contractual más amplia generalmente conocida en el derecho civil y el mercantil como el crédito documentado. Pérez

Fontana, Sagunto F.: *El Crédito Documentado Irrevocable*, Montevideo, 1966; Stouffet, Jean: *Le Crédit Documentaire*, París, 1956; Garrigues. J.: *Contratos Bancarios*, Madrid, 1958, págs. 584 *et seq*. Dentro de esta figura caben la antigua carta de crédito(³) y otras más.

La propia carta de crédito, institución conocida desde hace siglos, Kozolchyk, Boris: *Commercial Letters of Credit in the Americas*, New York, 1966, cap. 1, y que tiene ciertas tangencias con la tarjeta de crédito multilateral, ha resistido los múltiples esfuerzos de subclasificación que se han efectuado, habiéndose intentado asemejarla al mandato, a la fianza, a la estipulación para otro y a otros tipos de contrato. Pérez Fontana, *op. cit.*, págs. 8, 28 *et seq*. El caso de la tarjeta de crédito bilateral es un tanto más sencillo, pues se reconoce desde hace tiempo en nuestro derecho el contrato de apertura de crédito o contrato de crédito mediante el cual una parte se obliga a extenderle crédito a otra a cambio de determinadas prestaciones. Véase, para su versión bancaria: Garrigues, *op. cit.*, 205 *et seq*. Forzar instituciones nuevas o aun simples usos nuevos de instituciones conocidas en encasillados antiguos es tarea, no obstante, que nunca está exenta de peligros. No todo se encuentra ni se debe encontrar con la minuciosidad deseada en el código, el cual deriva a veces su vitalidad y capacidad para adaptarse a realidades cambiantes más por razón de sus grandes silencios y de sus postulados generales que de sus preceptos detallados.

■ Lo cierto es que nos hallamos ante un contrato atípico, *sui generis*—nuestra propia Asamblea Legislativa utiliza un nuevo nombre para la entidad: "plan de cuentas rotativas". (⁴) El mismo naturalmente evoca el antiguo contrato de crédito y aun la simple y vieja práctica de abrirles crédito en una

---

(³) Véanse los Arts. 550 y ss. de nuestro Código de Comercio de 1932, 10 L.P.R.A. sec. 1851 *et seq*.

(⁴) Art. 101 de la Ley Núm. 68 de 19 de junio de 1964, según enmendada, 10 L.P.R.A. sec. 731(19).

tienda a parroquianos de confianza, pero también posee atributos particulares. El contrato es obviamente de carácter bilateral. Garrigues, *op. cit.*, 207. El contrato no es carente de causa. Hay prestaciones mutuas. La tarjeta de crédito no es un acto de gracia que el comerciante realiza unilateralmente en beneficio del consumidor. Las cifras citadas revelan la importancia de la institución en el comercio de hoy.

De lo anterior se deduce que erró el tribunal de instancia, inducido sin duda por la fraseología de la demanda, al enfocar el caso estrictamente en términos de la existencia o no de los elementos de la culpa aquiliana. La tarjeta de crédito bilateral constituye un contrato en el derecho de Puerto Rico y se ha designado así expresamente por nuestra Asamblea Legislativa. *Loc. cit.* La violación de lo acordado da lugar, por supuesto, a una acción *ex contractu* o, bajo las circunstancias apropiadas, a una acción por daños y perjuicios bajo el Art. 1803 de nuestro Código Civil.

■ Aun examinando el caso desde el punto de vista de una acción de daños y perjuicios, no obstante, la prueba revela que se cometió un error, debido presuntamente a la negligencia de un empleado de Sears—presunción que no fue refutada—y a que la parte demandante sufrió en consecuencia "algún daño", según la determinación del tribunal de instancia. Procedía en tal sentido dictar sentencia a favor de los tenedores de la tarjeta por el monto del daño sufrido. No es imprescindible en estos casos probar difamación. Compárese: Sharp, John M.: *Credit Reporting and Privacy—The Law in Canada and the U.S.A.*, Toronto, 1970, pág. 71.

■ La prueba demostró igualmente que cabía la acción contractual. Sears, por equivocación, violó la obligación de venderle mercancía a crédito al tenedor de una tarjeta suya, expedida para tales propósitos. El comerciante tiene perfecto derecho a investigar si una cuenta está al día pero es responsable bajo nuestro derecho civil por los errores que

se incurran, aun cuando se cometan de entera buena fe, que lleven a la violación del contrato de crédito. Compárese *Ratner v. Chemical Bank of New York Co.*, 329 F.Supp. 270 (D.C.N.Y. 1971). También es responsable por aquellos actos de sus empleados que en contextos como el presente sean lesivos a la dignidad de otros seres humanos, interés protegido por la Sec. 1 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico. Aunque el problema no se plantea aquí, valga señalar, por la importancia del mismo, que de introducirse en los contratos de crédito cláusulas para salvar la responsabilidad del comerciante en situaciones como la de autos, existen dudas en extremo graves sobre su validez. Garrigues, J.: *Contratos Bancarios*, Madrid, 1958, pág. 619.

El examen del desarrollo de las nuevas modalidades del crédito en Estados Unidos revela una tendencia inicial de los tribunales a proteger usualmente al comerciante frente al consumidor. Se consideraba aparentemente indispensable para el desenvolvimiento de las nuevas instituciones y el bienestar económico del país. Dicha tendencia ya ha comenzado a atemperarse, como hemos visto, con el dramático crecimiento de las que fueron una vez frágiles criaturas y hasta se ha legislado para comenzar a extenderles mayor protección a los consumidores. Los procedimientos para la preparación y mantenimiento de las cuentas se han refinado también a tal extremo que las posibilidades de error se han reducido dramáticamente. En el caso de la propia Sears, refiriéndonos a las operaciones totales de la empresa matriz, se produjeron quejas—quejas concernientes a cuestiones de toda índole y no sola las relativas a problemas de crédito—únicamente en el .018% de todas las cuentas de la compañía en 1972, lo que constituyó un descenso de la experiencia en 1968, en que el porcentaje fue .023%. [5] En Puerto Rico, los datos disponibles reflejan incuestionablemente que la tarjeta de crédito ha rebasado también su etapa preliminar de desarrollo.

[5] U.S. Senate Report, 344.

Esto no significa que la balanza debe inclinarse desmedidamente en caso alguno ni que en todo litigio debe prevalecer siempre, no importa las circunstancias concernidas, determinada parte. Cada causa deberá examinarse a la luz de sus hechos particulares con la mesura que impone el tratamiento de una institución en proceso de rápido cambio. La aquilatación de los daños deberá hacerse teniendo en consideración la diferencia entre los perjuicios sufridos, física o emocionalmente, y las simples molestias o contrariedades que hasta cierto grado nos imponen las condiciones variables de nuestro sistema de vida.

Por los fundamentos expuestos se *revocará la sentencia del tribunal de instancia y se ordena el pago por la demandada a los recurrentes de la cantidad de mil dólares, más las costas.*

El Juez Asociado Señor Ángel M. Martín, disiente. El Juez Asociado Señor Martín hubiera confirmado la sentencia del tribunal de instancia por entender que la prueba presentada por los demandantes no demuestra que éstos sufrieron daños que justifiquen compensación alguna.