SEARS ROEBUCK DE PUERTO RICO, demandante y recurrida, *v.* MUNICIPIO DE SAN JUAN, demandado y recurrente.

*Número:* RE-87-50      *Resuelto:* 30 de junio de 1988

*José A. Menéndez Cortada*, de *Martínez Álvarez, Fernández Paoli, Menéndez Monroig, Menéndez Cortada y Lefranc Romero*, abogado del recurrente; *Julio L. Aguirre* y *José J. Álvarez*, de *Fiddler, González y Rodríguez*, abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

Por tercera ocasión en este término nos toca dirimir una controversia sobre el alcance del poder impositivo de los municipios según éste ha sido delegado por conducto de la Ley de Patentes Municipales, 21 L.P.R.A. sec. 651 *et seq.*

En *Banco Popular v. Mun. de Mayagüez*, 120 D.P.R. 692, 702–703 (1988), establecimos que en los casos de los bancos, la Ley de Patentes Municipales "revela claramente que la Asamblea Legislativa tuvo la intención de extender el poder impositivo del gobierno local municipal, ampliando la sombrilla estatutaria, al sujetar el pago de la patente a los ingresos y beneficios no sólo originados dentro de la demarcación geográfica jurisdiccional del municipio, sino a los ingresos recibidos aunque fueran derivados de las operaciones en bancos fuera de Puerto Rico".

En *American Express Co. v. Mun. de San Juan*, 120 D.P.R. 339 (1988), decidimos que el negocio de tarjetas de crédito de American Express constituye una actividad financiera sujeta al pago de patentes municipales. 21 L.P.R.A. sec. 651a(a)(5).[1]

---

[1] "(5) Negocio financiero—El término 'negocio financiero' significa toda industria o negocio consistente en servicios y transacciones de bancos comerciales, asociaciones de ahorro y préstamos, bancos mutualistas o de ahorros, compañías

■ En el caso ante nos debemos resolver si los intereses que cobra y recibe Sears Roebuck de Puerto Rico (Sears) por el uso en Puerto Rico de su tarjeta de crédito, tributan bajo el inciso (a) o (b) de la Sec. 5 de la Ley de Patentes Municipales, Ley Núm. 113 de 10 de julio de 1974 (21 L.P.R.A. sec. 651d). Sears sostiene que le corresponde pagar bajo el inciso (b), que dispone:

> (b) Se le impondrá y cobrará a toda persona dedicada a la prestación de cualquier servicio, a la venta de cualquier bien o a cualquier industria o negocio no comprendido bajo el inciso (a) de esta sección una patente que en ningún caso podrá exceder de treinta centésimas (.30) del uno por ciento (1%) de su volumen de negocio atribuible al municipio que impone la pa-' tente autorizada. 21 L.P.R.A. sec. 651d(b).

Por otro lado, el Municipio de San Juan impuso la patente bajo el inciso (a), que establece:

> (a) Se le impondrá y cobrará a toda persona dedicada a cualquier negocio financiero una patente que en ningún caso podrá exceder de (1.00%) de su volumen de negocios atribuibles al municipio que imponga la patente autorizada. 21 L.P.R.A. sec. 651d(a).

El Tribunal Superior, Sala de San Juan, le dió la razón a Sears y dictó sentencia sumaria a su favor. Acordamos revisar.

■ Por los fundamentos que expondremos a continuación, revocamos y resolvemos que el negocio de tarjetas de crédito utilizadas por Sears es un "negocio financiero" sujeto a una patente de (1.00%) de su volumen de negocios atribuible al Municipio de San Juan, según éste se define en la Sec.

---

de financiamiento, compañías de seguro, compañías de inversión, agencias de cobro y de cualquier otra actividad financiera llevada a cabo por cualquier industria o negocio." 21 L.P.R.A. sec. 651a(a)(5).

2 de la Ley de Patentes Municipales, 21 L.P.R.A. sec. 651a(a)(6)(B).(2)

De acuerdo con lo anterior, pasamos a considerar los hechos y el derecho aplicable.

## I

El 10 de diciembre de 1982 Sears presentó contra el Municipio de San Juan una demanda impugnatoria de la Resolución sobre Reconsideración de Deficiencia "cubriendo los años contributivos 1977–78, 1978–79, 1979–80 y 1980–81".(3)

En lo pertinente alegó que:

B. Sears para los años en controversia incluyó en su volumen de negocios, y pagó la patente municipal a la tasa de .30%, los intereses pagádoles en sus cuentas rotativas. La demandante sostiene que dicho volumen de negocios por intereses está sujeto al pago de patente municipal a la tasa (1%) aplicable a negocios financieros.

C. La demandada al computar la alegada deficiencia por la partida de intereses según explicado en el párrafo B precedente no acreditó el .30% pagados por Sears sobre los mismos.

---

(2) "(B) Negocio financiero—Cuando se trate de negocio financiero el 'volumen de negocios' será los ingresos brutos recibidos o devengados excluyendo: (1) el costo de la propiedad vendida; (2) los reembolsos de anticipos, préstamos y créditos concedidos, pero sin que la suma deducida por estos conceptos exceda el principal de dichos anticipos, préstamos o créditos; (3) los depósitos; y (4) las pérdidas incurridas en cualquier operación sobre valores, pero sin que la deducción que se haga por ese concepto exceda del total de las ganancias obtenidas por dichos valores.

"En el caso específico de bancos comerciales y asociaciones de ahorro y préstamos, bancos mutualistas o de ahorro el ingreso bruto significará los intereses recibidos o devengados de préstamos, los cargos por servicios prestados, las rentas, el beneficio bruto en la venta de propiedades o valores y las ganancias, beneficios e ingresos derivados de cualquier otra procedencia.

"El ingreso bruto devengado por estas organizaciones sujeto al pago de patentes se distribuirá entre las sucursales de acuerdo con la proporción que guarden todas las clases de depósitos de la sucursal con los depósitos totales de la organización." 21 L.P.R.A. sec. 651a(a)(6)(B).

(3) A tenor con el procedimiento estatutario en la Sec. 16 de la Ley de Patentes Municipales, Ley Núm. 113 de 10 de julio de 1974 (21 L.P.R.A. sec. 651o(a)(2)).

D. Los intereses antes explicados son generados en centros de créditos establecidos fuera de los límites territoriales del Municipio de San Juan. Demanda, pág. A–2.

El municipio compareció oponiéndose al remedio solicitado. Sears sometió una moción de sentencia sumaria parcial fundada en que no se dedicaba y no se dedica a prestar servicios de tarjetas de crédito con fines de lucro, ya que los cargos hechos a los usuarios no llegan a cubrir los costos de dicho servicio. El municipio sostuvo que no procedía la contención de Sears, ya que de acuerdo con la Sec. 2 de la Ley de Patentes Municipales, 21 L.P.R.A. sec. 651a, es inmaterial que se deriven ganancias o beneficios del negocio financiero. El 17 de junio de 1983 el tribunal declaró sin lugar la moción de Sears.

En el informe sobre conferencia preliminar entre abogados, las partes hicieron las estipulaciones siguientes:

*ESTIPULACIONES DE LAS PARTES*

1. Sears Roebuck de Puerto Rico, Inc. (Sears) es una corporación organizada y existente bajo las leyes del Estado de Delaware y debidamente autorizada a hacer negocios en Puerto Rico.

2. El 10 de noviembre de 1982, el Director de Finanzas del Municipio de San Juan le cursó a Sears un [sic] "Resolución Sobre Reconsideración de Deficiencia", cubriendo los años contributivos 1977–78, 1978–79, 1979–80 y 1980–81 (Exhibit A).

3. Las alegadas deficiencias surgen de:

A. El año de contabilidad de Sears comienza el 1ro. de febrero y termina el 31 de enero de cada año. Las Planillas de Patente Municipal rendidas por Sears para los años en controversia reflejaban el volumen de negocios al cierre de su año en contabilidad terminado en el año natural anterior, según sigue:

a. Año 1977–78 — Volumen de negocios al 31 de enero de 1976.

b. Año 1978–79 — Volumen de negocios al 31 de enero de 1977.

c. Año 1979–80 — Volumen de negocios al 31 de enero de 1978.

d. Año 1980–81 — Volumen de negocios al 31 de enero de 1979.

La parte demandada sostiene que el volumen de negocios a reflejarse en dichas planillas es el que surge al cierre del año de contabilidad de Sears terminado el 31 de enero del año natural en que se rinde la Planilla de Patente Municipal, según sigue:

a. Año 1977–78 — volumen de negocios al 31 de enero de 1977.

b. Año 1978–79 — volumen de negocios al 31 de enero de 1978.

c. Año 1979–80 — volumen de negocios al 31 de enero de 1979.

d. Año 1980–81 — volumen de negocios al 31 de enero de 1980.

B. Sears para los años en controversia incluyó en su volumen de negocios, y pagó la patente municipal a la tasa de .30% los intereses pagádoles en sus cuentas rotativas. La demandante sostiene que dichò volumen de negocios por intereses está sujeto al pago de patente municipal a la tasa (1%) aplicable a negocios financieros.

C. La demandada al computar la alegada deficiencia por la partida de intereses, según explicado en el párrafo B precedente, no acreditó el .30% pagados por Sears sobre los mismos. Concluido este litigio, la parte demandada otorgará el crédito correspondiente a dicho pago.

D. El demandado incluyó en la Deficiencia los intereses generados en las cuentas rotativas de Sears en todo Puerto Rico. Los intereses antes explicados son generados, en parte, en centros de créditos establecidos fuera de los límites territoriales del Municipio de San Juan, en las tiendas por departamentos localizadas en Ponce y Mayagüez. Para los años en cuestión, el crédito en cuentas rotativas en San Juan constituía los siguientes porcientos de todo el crédito en cuentas rotativas:

| | |
|---|---|
| 1977–78 | 48.41% |
| 1978–79 | 47.05% |

| | |
|---|---|
| 1979–80 | 43 % |
| 1980–81 | 39.63% |

Se estipula que la demandada incluyó indebidamente en la Deficiencia los intereses generados en las cuentas rotativas de Sears fuera del Municipio de San Juan. No se estipulan los porcientos de crédito en cuentas rotativas en el Municipio de San Juan. Informe sobre conferencia preliminar entre abogados, págs. A–30 a A–32.

En la vista de 31 de octubre de 1983 el tribunal aprobó el informe y señaló la vista en su fondo para el mes de octubre de 1984. El 18 de septiembre de 1984 Sears presentó otra moción de sentencia sumaria parcial. Allí sostuvo que no está sujeta a una patente en la clasificación de negocio financiero sobre los intereses generados en razón de la venta de su mercancía al por menor a plazos. En apoyo de la misma, acompañó la siguiente declaración jurada.(4)

### DECLARACIÓN JURADA

Yo, William J. Phillips, mayor de edad, soltero, vecino de Isla Verde, Puerto Rico, Vice Presidente-Contralor de Sears, Roebuck de Puerto Rico, Inc. bajo el más solemne juramento declaro:

1. Que soy de las circunstancias personales anteriormente mencionadas.

2. Que he ocupado la posición de Vice Presidente-Contralor de Sears, Roebuck de Puerto Rico, Inc. (en adelante Sears) por los últimos diez (10) años.

3. Que tengo propio y personal conocimiento del negocio y operaciones de Sears.

4. Que Sears se dedica a:

A. Venta de mercancía al detal a través de tiendas por departamentos localizadas en Bayamón, Fajardo, Carolina, Caguas, Arecibo, Ponce, San Juan, y Mayagüez.

B. Servicio de reparación de alguna de la mercancía que vende al detal.

---

(4) La moción de Sears y las réplicas son realmente memorandos sobre las cuestiones de derecho presentes. A igual conclusión llegamos en cuanto a los escritos del Municipio de San Juan.

5. Que el pago de las compras y servicios hechas y prestados por Sears lo hacen sus clientes en efectivo cuando se efectúa la compra o se rinde el servicio, o a crédito.
6. Que el crédito Sears lo ofrece a través de un sistema de cuentas rotativas donde el cliente cualificado puede cargar el importe de sus compras. Este sistema se utiliza exclusivamente para compras en y servicios prestados por Sears. De verificarse el pago de treinta (30) días de la fecha de la compra, o del servicio, el importe se paga neto. De lo contrario, la transacción se convierte en una venta al por menor a plazos la cual genera intereses bajo los términos de un "Contrato de Ventas al Por Menor a Plazos", según lo dispone la Ley Núm. 68 aprobada el 19 de junio de 1964, según enmendada (10 L.P.R.A. [secs.] 731 a 760).
7. Que Sears no se dedica al negocio de prestar dinero, comprar, descontar o de otra manera adquirir pagarés, y otras evidencias de deudas.
8. Que durante los años en controversia el ingreso de Sears se dividió como sigue:

| AÑO: ENERO 31 DE | INGRESO VENTAS Y SERVICIO | INGRESOS INTERESES CTS. ROTATIVAS | INGRESOS TOTALES |
|---|---|---|---|
| 1976 | $ 78,105,497.00 | $ 2,159,400.00 | $ 80,264,897.00 |
| 1977 | 91,608,934.00 | 6,551,022.00 | 98,159,956.00 |
| 1978 | 98,730,292.00 | 8,459,905.00 | 107,190,197.00 |
| 1979 | 112,192,778.00 | 10,627,302.00 | 122,820,080.00 |

Apéndice IX, pág. A–115.

En su oposición, el municipio presentó los siguientes hechos:

3. Sears Roebuck de Puerto Rico, Inc. (Sears) se dedica a la venta de seguros, a la venta de artículos en general, agencia

de viaje, salón de belleza, alquiler de automóviles, farmacia, herrería, óptica, y otros servicios. Todos los servicios y mercancía que vende Sears se pueden comprar en efectivo o mediante la utilización de la tarjeta de crédito. Dentro y fuera de la tienda de Sears hay sinnúmero de con[c]e[s]ionarios en los cuales se puede pagar con la tarjeta de crédito y los negocios no pertenecen a Sears. Entre estos negocios, los cuales pagan patente municipal por separado[,] están:

1. Audio Aid, Inc.
2. Cana de P.R. Las Llaves
3. Optical Sears Dept.
4. Kareño [F]oto Studio
5. Video Concession of P.R.
6. Ismael Cabrera, Inc.
7. Foto Revelado
8. Sears Meat Market Shop
9. Budget Rent A-Car
10. Rug Ultra Clean

En adición a los negocios arriba señalados operan en Puerto Rico como parte del "Sears Financial Network":

1. Allstate Insurance
2. Dean, Witter, Reynolds, Inc.

La segunda compañía se dedica a la venta y compra de valores [y] acciones como corredores de inversiones. (Escolio omitido.) Apéndice X, págs. A–136 a A–137.

En adición solicitó que:

Las alegaciones aquí consignadas y la declaración jurada sometida no solamente establecen que existe una controversia de hechos, s[in]o que en adición destruye la teoría de la parte demandante y sostienen la teoría de la demandada *por lo cual procede se dicte una Sentencia Sumaria Parcial a favor de la parte demandada.* (Énfasis suplido.) Apéndice X, pág. A–145.

El 22 de diciembre de 1986 el Tribunal Superior, Sala de San Juan (Álvarez De la Vega, Juez), emitió la sentencia siguiente:

Se declara con lugar la Moción de Sentencia Sumaria Parcial radicada por la parte demandante y se anula la deficiencia notificada correspondiente a las partidas de intereses. Se or-

dena, además, que una vez esta Sentencia advenga a ser final y firme, se cancele la fianza prestada por la parte demandante sobre la deficiencia anulada en esta Sentencia. Apéndice XII, págs. A–215 a A–216.

## II

En apoyo de su recurso, el municipio señala que el tribunal cometió el error siguiente:(5)

*Erró el Honorable Tribunal sentenciador en determinar que los ingresos por concepto de intereses en la tarjeta de crédito no son ingresos de un negocio financiero según dispone la Ley de Patentes Municipales.* Petición, pág. 3.

■ Para empezar, reiteramos que los municipios tienen la facultad, según el poder delegado por la Asamblea Legislativa, para imponer el pago de patentes municipales. Si alguna duda existía, ésta quedó disipada en las opiniones en *Banco Popular v. Mun. de Mayagüez*, supra, y *American Express Co. v. Mun. de San Juan*, supra. A lo allí expuesto no hay nada que añadir.

■ Por otro lado, el poder de tributación municipal es sumamente amplio. Como apuntamos en *American Express Co. v. Mun. de San Juan*, supra, págs. 346–348:

Si bien en otras jurisdicciones se favorece una interpretación restrictiva del poder tributario de los municipios, C.J. Antieau, *Municipal Corporation Law*, Nueva York, Ed. Matthew Bender, 1979, Vol. 2A, Sec. 21.02; McQuillin, *op. cit.*, Sec. 44.13, en Puerto Rico la Asamblea Legislativa, al amparo del Art. VI, Sec 1. de la Constitución del E.L.A., supra, delegó esa autoridad fiscal con la clara intención de "ampliar el número de industrias o negocios con fines de lucro sujetos a tributa-

---

(5) El municipio no cuestiona la parte de la sentencia sumaria parcial que resuelve que en su oposición no estableció la existencia de una controversia de hechos. Ello nos releva de resolver si el tribunal utilizó los criterios adecuados al respecto. Realmente lo que tenemos ante nos es una cuestión de derecho.

ción". Informe de la Comisión de Hacienda de la Cámara de Representantes de 20 de junio de 1974, pág. 2. Véase, también, Córdova, *op. cit.*, pá[g.] 283 *et seq.*

Como consecuencia del crecimiento vertiginoso de las ciudades y, por ende, de los servicios municipales, la ley de patentes evolucionó rápidamente. La legislación vigente tiene su origen en la Ley de Patentes aprobada en 1914, la que enumeraba en forma taxativa los negocios sujetos a tributación. 1914 Leyes de Puerto Rico 142. En el 1931 se aprobó otra ley que facultó a los municipios a clasificar e incluir empresas comerciales e industriales. 1931 Leyes de Puerto Rico 565. Véanse: *Cervecería India* v. *Municipio*, 77 D.P.R. 100 (1954); *Zerbe Penn* v. *Gob. de la Capital*, 86 D.P.R. 618 (1962); *Mun. de San Juan* v. *P.R. Coal Co.*, 28 D.P.R. 263 (1920); *Texas Co. (P.R.), Inc.* v. *Municipio*, 81 D.P.R. 499 (1959); *Yabucoa Sugar Co.* v. *Municipio*, 44 D.P.R. 348 (1933). Finalmente, en el 1974 la Asamblea Legislativa concedió una facultad general a los ayuntamientos para imponer y cobrar patentes a diversas clases de negocios definidos por ley. 21 L.P.R.A. sec. 651.

Esta ley responde a una filosofía que favorece ampliar los poderes de los municipios, de manera que éstos puedan proveer más servicios directos a la ciudadanía. En *Molinos de P.R.* v. *Municipio de Guaynabo*, 105 D.P.R. 470, 474 (1976), resumimos la evolución del derecho puertorriqueño sobre patentes municipales:

"Durante los últimos años ha habido una corriente de pensamiento, no exclusiva desde luego, que favorece la ampliación de la facultad impositiva de los municipios. De ahí surge esta tendencia que favorece la ampliación de las facultades impositivas de los municipios. Naturalmente, este es un problema complejo de política pública lleno de concomitancias y corresponde a la Asamblea Legislativa y no al Poder Judicial tomar las decisiones que estime pertinentes. Sin embargo, como dijimos en *Texas Co. (P.R.)* [, *Inc.*] v. *Municipio*, 81 D.P.R 499, 509 (1959), no estamos justificados en adoptar normas restrictivas "en contra del poder contributivo de los municipios, a la luz de las claras e inequívocas expresiones que de tiempo en tiempo ha venido haciendo la Asamblea Legislativa con el fin de fortalecer, antes que debilitar, la facultad contributiva de los gobiernos mu-

nicipales concedida en la Ley de Patentes." Cuando hay autoridad de la ley para ello y excepto en casos inherentemente sospechosos no estamos inclinados a intervenir con la regulación económica municipal, pues como hemos señalado, esta es una función primordialmente legislativa, *City of New Orleans* v. *Dukes*, 49 L.Ed.2d. 511 (1976). (Escolio omitido.)"

Recientemente, en *Arecibo Bldg. Corp.* v. *Mun. de Arecibo*, 115 D.P.R. 76, 78 (1984), reafirmamos lo expresado en *Molinos de P.R.* v. *Municipio de Guaynabo*, supra, y añadimos que:

"La Sec. 3 de la Ley de Patentes de 1974 (21 L.P.R.A. sec. 651b) autoriza a las Asambleas Municipales de todos los municipios a imponer y a cobrar patentes 'a toda persona dedicada a la prestación de cualquier servicio, o a la venta de cualquier bien, negocio financiero y/o cualquier industria o negocio. . . '. Del texto de la ley se desprende que la autoridad concedida a los municipios es *amplia*. La utilización de las palabras 'toda persona', 'cualquier servicio', 'cualquier industria o negocio' no permiten que se le dé una interpretación restrictiva . . . . (Énfasis suplido.)"

Seguimos dicha norma de interpretación en *Banco Popular* v. *Mun. de Mayagüez*, supra, pág. 697, al destacar que:

En el pasado prevalecía un enfoque restrictivo en materia de interpretación estatutaria del poder municipal para imponer contribuciones. Se aceptaba que su esfera de acción no debería extenderse implícitamente ni por analogía ensancharse su operación para abarcar materias no señaladas específicamente. *Cortada* v. *Municipio de Ponce*, 47 D.P.R. 615, 630 (1934); *Rubert* v. *Sancho Bonet, Tes.*, supra; 16 *McQuillin, Mun. Corp.* Sec. 44.13 (3ra ed. 1986); E. Córdova, *Curso de Gobierno Municipal*, Río Piedras, Ed. Universitaria, 1964, págs. 341–345; G. Meléndez Carrucini, *Organismos Impositivos de Puerto Rico—Facultades Comparadas*, 18 Rev. Jur. U.I.[A.] 27–45 (1983).

Sin embargo, a raíz de aprobarse la nueva Ley de Patentes Municipales que nos ocupa, este enfoque comenzó a reflejar un cambio.

De las alegaciones, las estipulaciones y las determinaciones del tribunal de instancia se desprende que los intereses devengados por Sears por el uso de su tarjeta de crédito son parte importante y fundamental de su red financiera y comercial.

A los efectos decisorios de este caso, no hay diferencia fundamental entre las tarjetas de crédito que utiliza Sears y las de American Express. En *American Express Co. v. Mun. de San Juan*, supra, págs. 350–353, expresamos que:

> La tarjeta de crédito es un instrumento moderno de financiamiento de amplio arraigo en nuestra vida económica que ha revolucionado el financiamiento de bienes al consumidor, al facilitar un método de crédito aceptable en numerosos establecimientos a través de todo el mundo. En Puerto Rico, aunque no existen datos completos, se estima que hay más de un millón de tarjetas emitidas por tiendas por departamentos, bancos y otras entidades. Carrión, Testimonio de la Asociación de Bancos de Puerto Rico sobre el Uso de Tarjetas de Crédito en Puerto Rico y el Impacto que Éste Pueda Tener en el Pueblo Consumidor, ante la Honorable Comisión de Asuntos al Consumidor del Senado de Puerto Rico de 10 de diciembre de 1986. Las cuentas rotativas y de plazos diferidos, mayormente representadas por la figura de la tarjeta de crédito, constituyen una de las principales fuentes de crédito en Puerto Rico con un valor total de $216 millones al finalizar el año fiscal 1984. Informe Económico al Gobernador, Junta de Planificación, 1983–1984, Tomo II, pág. X–12.
>
> La tarjeta de crédito moderna tiene muchas modalidades. Anteriormente, en *Santiago* v. *Sears Roebuck*, 102 D.P.R. 515, 522 (1974), examinamos extensamente este instrumento de crédito y reconocimos que en cualquiera de sus formas "constituye un contrato en el derecho de Puerto Rico y se ha designado así expresamente por nuestra Asamblea Legislativa". Esta figura contractual de naturaleza atípica, conocida comúnmente como "contrato de apertura de crédito", crea una relación compleja entre el usuario y la institución que origina las tarjetas. Sus contornos fueron definidos posteriormente por este Tribunal en *Banco de Ponce* v. *D.A.C.O.*, 114 D.P.R.

92 (1983), al examinar únicamente la aplicación de la Ley de Ventas a Plazos y Financiamiento, 10 L.P.R.A. sec. 731 *et seq.*, a la cuota anual cobrada por una entidad bancaria una vez se expide una tarjeta de crédito. El término "cargo por financiamiento" de la Ley de Ventas a Plazo y Financiamiento que allí examinamos, no es sinónimo del concepto de "actividad financiera" que hoy nos corresponde analizar al amparo de la Ley de Patentes Municipales, 21 L.P.R.A. sec. 651 *et seq.* En este caso la controversia es más complicada. Requiere que, sin penetrar las distintas entidades corporativas, examinemos la compleja, sofisticada y dinámica interrelación entre los distintos componentes del sistema operado por American Express, y determinar si la práctica constituye una actividad financiera para efectos del pago de las correspondientes patentes municipales.

En términos generales, estamos ante "un documento que permite a su titular obtener bienes o servicios sin tener que hacer su pago inmediatamente. Su funcionamiento puede resumirse de la siguiente forma: La entidad emisora, banco u otro tipo de sociedad, después de estudiar cada caso concreto, envía la tarjeta a su titular que mediante su presentación puede adquirir bienes o servicios en determinados establecimientos, limitándose a firmar la factura que le presenta el comerciante. [É]ste remite dicha factura a la entidad emisora, que le abona su importe [o un por ciento del mismo]. El cliente, por su parte, paga a fin de mes o más tarde." Gómez Mendoza, *Consideraciones generales en torno a las tarjetas de crédito*, en *Homenaje a Joaquín Garrigues*, Madrid, Ed. Tecnos, 1971, T. II, pág. 91.

La tarjeta de crédito cumple con varias funciones económicas: sirve como instrumento de pago, en la medida que permite a los usuarios sustituir el pago en metálico al adquirir bienes y servicios; funciona como instrumento de garantía de pago al comerciante siempre que éste cumpla con las condiciones contractuales y, finalmente, mediante la tarjeta el consumidor obtiene crédito de la entidad emisora que varía de acuerdo a la relación contractual y a la reglamentación del Estado. Íbid., págs. 393–394. En otras palabras, las tarjetas funcionan como evidencia de una promesa de pago futuro. En esta medida se asemejan a las cartas de crédito y a los instru-

mentos negociables. *Santiago* v. *Sears Roebuck,* supra, págs. 520–521; R.J. Nordstron, *Law of Sales*, Minnesota, West Pub. Co., 1970, págs. 345–346; B. Clark, *The Law of Bank Deposits, Collections and Credit Cards*, 2da ed. rev., Boston, Ed. Warren, Gorham and Lamont, 1981, págs. 9–12.

■ En apoyo de su conclusión, el tribunal de instancia determinó que Sears se dedica a la venta de mercancía al detal y al servicio de reparación de ésta, y que el pago lo hacen los clientes en efectivo o a crédito a través del sistema de cuentas rotativas. Razonó que, de no pagarse en treinta (30) días la transacción, se convierte en una venta al por menor a plazos la cual genera intereses bajo los términos del "Contrato de Ventas Al Por Menor a Plazos". Por ello entendió que la transacción está regulada por la Ley de Ventas a Plazos y Compañías de Financiamiento, Ley Núm. 68 de 19 de junio de 1964, según enmendada, 10 L.P.R.A. sec. 731 *et seq.* Dicha ley incluye en su definición del término "vendedor al por menor" o "vendedor" al emisor de una tarjeta de crédito y al portador; dispone que el contrato para el uso de una tarjeta de crédito es de venta al por menor a plazos y define lo que es tarjeta de crédito. 10 L.P.R.A. sec. 731(3), (6), (19) y (22).[6]

---

[6] Las aclaraciones hechas por la Ley Núm. 9 de 4 de marzo de 1976, dejan la ley vigente en la forma siguiente:

"'. . . 3. "Vendedor al por menor" o "vendedor" significa toda persona que venda mercancía o supla o rinda servicios, o prometa suplirlos o rendirlos, a un comprador al por menor bajo un contrato de venta al por menor a plazos. El término incluye el arrendador bajo el arrendamiento de un departamento en una tienda, bazar u otro establecimiento, si el arrendador fuera responsable a los clientes respecto de la mercancía vendida o los servicios rendidos o suplidos en el departamento arrendado y de las demás operaciones del mismo. El término incluye también al emisor de una tarjeta de crédito y al acreedor hipotecario mobiliario.

. . . . . . . . .

"'6. "Contrato de venta al por menor a plazos" o "contrato" significa cualquier acuerdo convenido en Puerto Rico, incluyendo una hipoteca sobre bienes muebles, contrato de venta condicional o cualquier otro documento evidenciario

Pero el hecho de que el negocio de las tarjetas de crédito esté regulado por el Estado en virtud de dicha ley, no es pertinente para la decisión de la controversia ante nos si al cobrar intereses a un portador de su tarjeta de crédito la empresa está involucrada en un negocio financiero a los fines de la Ley de Patentes Municipales. 21 L.P.R.A. sec. 621 *et seq.*

---

de un acuerdo para pagar el precio de venta al por menor a plazos de mercancía o servicios en el transcurso de un período determinado de tiempo. También incluye cualquier arrendamiento de mercancía mediante el cual el arrendatario convenga en pagar como compensación por el uso de la mercancía una suma sustancialmente equivalente a su valor, o en exceso de éste, y por el cual se convenga que el arrendatario estará obligado a, o tiene la opción de, convertirse en dueño después de cumplir con los términos del contrato. Además incluye los certificados de mercancía y certificados de crédito, así como cualquier acuerdo convenido en Puerto Rico en virtud del cual el comprador prometa pagar a plazos el precio de venta diferido de mercancía o servicios, o cualquier parte del mismo o cualquier otro acuerdo convenido en Puerto Rico en virtud del cual el comprador prometa pagar a plazos el balance descubierto de su deuda con un vendedor al por menor y bajo los cuales los cargos a plazos se debitan al balance descubierto por la deuda. Además incluye un contrato para el uso de una tarjeta de crédito.

"'19. "Plan de cuentas rotativas y tarjetas de crédito", significa un contrato entre un vendedor al por menor a plazos o un emisor de tarjetas de crédito y un comprador al por menor a plazos o un emisor de tarjetas de crédito y un comprador al por menor en el cual se establecen los términos de las transacciones a ser hechas periódicamente en consonancia con dicho contrato; o un contrato para el uso de una tarjeta de crédito; según el cual ni el vendedor ni el emisor de dicha tarjeta de crédito retiene título o gravamen sobre la mercancía adquirida por el comprador. El balance adeudado por el comprador es pagadero a plazos en cierto período de tiempo y bajo los términos del contrato. El cargo por financiamiento habrá de computarse mensualmente, en relación con el balance adeudado por el comprador.

"'22. "Tarjeta de crédito". Significa cualquier instrumento u objeto conocido como tarjeta de crédito, placa, libro de cupones o por cualquier otro nombre, expedido con o sin el pago de un cargo por quien la recibe, para el uso del tenedor en la obtención o adquisición a crédito de dinero, bienes, servicios o cualquier otra cosa de valor en el establecimiento del emisor de la tarjeta de crédito o en cualquier otro establecimiento.'" 1976 Leyes de Puerto Rico 22–24.

Esta ley es regulatoria, de protección al consumidor, con el fin de que el Departamento de Asuntos del Consumidor, hoy Comisionado de Instituciones Financieras, "pueda desarrollar una política de disponibilidad de crédito congruente con la política fiscal y económica del Estado Libre Asociado de Puerto Rico". Leyes de Puerto Rico, *supra*, pág. 22.

■ En *American Express Co. v. Mun. de San Juan*, supra, pág. 350 esc. 5, en torno a otro planteamiento, dijimos que: "El hecho de que, al amparo de otra legislación, no pudiera clasificarse a la recurrida como institución financiera no es impedimento para concluir que se dedica a una actividad financiera al amparo de la Ley de Patentes Municipales."

El fundamento principal de la sentencia recurrida es el siguiente:

> La inclusión de las compañías de financiamiento en la enumeración de negocio financiero y la obvia exclusión de los negocios de ventas de mercancía al por menor a plazos nos convence de que el legislador no consideró éstas últimas como un negocio financiero. La Ley Núm. 68 del [sic] 19 de junio de 1964, según enmendada, 10 L.P.R.A. sec. 731, [sic] *et seq.*, tipifica y regula los dos negocios, las ventas de mercancía y servicios al por menor a plazos y el negocio de comprar o de otra manera adquirir contratos de venta al por menor a plazos (compañía de financiamiento). El legislador, conociendo estas leyes, optó por incluir expresamente a las compañías de financiamiento como negocio financiero y excluir la venta de mercancía al por menor a plazos con o sin tarjetas de crédito a pesar de que ambos negocios están regulados bajo la misma ley. Apéndice XIII, págs. A–209 a A–210.

■ Este razonamiento fue expresamente rechazado en *American Express Co. v. Mun. de San Juan*, supra. Allí resolvimos que el suplidor de una tarjeta de crédito se dedica a un negocio o actividad financiera. El hecho de que el negocio principal de Sears sea la venta de productos y la reparación de algunos de éstos no desvirtúa lo anterior.

Resta por considerar el siguiente fundamento del tribunal de instancia:

> 7. En adición, podemos concluir que siendo el cargo por interés parte integral de la venta al por menor a plazos[,] el municipio está impedido de separar el componente del interés del componente de la venta al por menor a plazos como si fue-

ran dos negocios o actividades distintas y asignarle a cada uno un tipo de contribución por concepto de patente separado. Este principio ha sido esbozado por nuestro Tribunal Supremo en *Fajardo Development Co.* v. *Camacho*, 35 DPR 355 (1926) donde [el] Tribunal ha expresado la regla general aplicable a estos casos:

"La regla general observada en la mayoría de los casos es que no puede dividirse un negocio al cual se impone una contribución general por ocupación, e imponerse una contribución adicional sobre ciertos elementos constituyentes del negocio; pero si el elemento al cual se fija la contribución adicional no es parte necesaria o usual del negocio en general será sostenida la contribución."

Como hemos visto, el cargo por interés en una venta al por menor a plazos es parte necesaria y usual del negocio de ventas al por menor a plazos. Por tanto, no tiene razón el Municipio de San Juan al tratar de imponerle a un negocio de ventas al por menor a plazos una patente por sus ventas al por menor a plazos y otra mayor por el cargo de interés que se cobran en dichas ventas. *West India Co.* v. *De Castro Administrador*, 54 DPR 380 (1939); *C.J. Fantaussi* v. *Asamblea Municipal de Arroyo*, 295 Fed. 803. Definitivamente, el permitir al municipio imponer el pago de patente al punto tres por ciento (.3%) sobre las ventas brutas[,] más el uno por ciento (1%) sobre los cargos de interés desvirtuar[í]a el propósito legislativo de simplificar la clasificación de los negocios bajo la ley, la administración y el recaudo de las contribuciones por concepto de patentes y evitar las controversias en cuanto al tipo aplicable a los negocios financieros y los no financieros. Anejo A, págs. 23–24.

El error que cometió el ilustrado juez de instancia es que el municipio no intentó imponerle patente al negocio de ventas de Sears al tipo contributivo de negocio financiero. Aquí solo se cobra a razón del uno por ciento a los intereses cobrados por Sears. La Sec. 5 de la Ley de Patentes Municipales, 21 L.P.R.A. sec. 651d, permite el cobro al disponer que:

(a) Se le impondrá y cobrará a toda persona dedicada a cualquier negocio financiero una patente que en ningún caso

podrá exceder de (1.00%) de su volumen de negocios atribuibles al municipio que imponga la patente autorizada.

(b) Se le impondrá y cobrará a toda persona dedicada a la prestación de cualquier servicio, a la venta de cualquier bien o a cualquier industria o negocio no comprendido bajo el inciso (a) de esta sección una patente que en ningún caso podrá exceder de treinta centésimas (.30) del uno por ciento (1%) de su volumen de negocio atribuible al municipio que impone la patente autorizada.

Además, la Sec. 6 de la Ley de Patentes Municipales, 21 L.P.R.A. sec. 651e, permite el cobro por separado al disponer que:

Toda persona que dentro de un mismo municipio se dedique a industrias o negocios sujetos a distintos tipos de patente pagará por separado la base total del volumen de negocios de cada industria o negocio y al tipo prescrito para cada industria o negocio según sea el caso.

Por los fundamentos aducidos, *se revocará la sentencia y se devolverá el caso para que continúen los procedimientos en cuanto al cómputo de la patente a tenor con la Sec. 7 de la Ley Núm. 113, supra, 21 L.P.R.A. sec. 651f.*

El Juez Asociado Señor Negrón García se inhibió.